## STATE OF CONNECTICUT *v.* ONE 1960 MERCURY STATION WAGON

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 5-10575

Argued November 27, 1967—decided January 12, 1968

*Edward J. Caldwell,* of Bridgeport, for the appellant Cody.

*John Rose, Jr.,* assistant chief prosecuting attorney, for the appellee (state).

**2**

JACOBS, J. In this proceeding, the state seeks the forfeiture of the automobile of John W. Cody. The automobile is described as a white 1960 Mercury station wagon bearing Connecticut registration No. UM-358 and was allegedly used as a device in the commission of the crime of policy playing in contravention of § 53-298 of the General Statutes. Due notice of the seizure and intended forfeiture was directed to the registered owner of the vehicle as provided for in § 54-33g of the General Statutes,[1] and we shall refer to him as the defendant. He filed an answer to the in rem proceeding in which he admitted ownership of the automobile but denied that it was a nuisance and that "he knowingly kept . . . [the vehicle] with intent to violate or in violation of the criminal laws of the State of Connecticut." And by way of special defense, he alleged that "[t]he search warrant under which the defendant's vehicle was seized was inadequate for the purpose of this proceeding in that it fails to list said vehicle as property for which a search was to be made."

---

[1] "Sec. 54-33g. SUMMONS TO OWNER ON SEIZURE OF PROPERTY. When pursuant to subdivision (1) of subsection (b) of section 54-33a any property has been seized, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the judge or court issuing the warrant shall, within forty-eight hours after such seizure, cause to be left with the owner of the property so seized, or at his usual place of abode, if he is known, or, if unknown, at the place where the property was seized, a summons notifying the owner and all others whom it may concern to appear before such judge or court, at a place and time named in such notice, which shall be not less than six nor more than twelve days after the service thereof, then and there to show cause why such property should not be adjudged a nuisance and ordered to be destroyed or otherwise disposed of as herein provided. Such summons may be signed by a clerk of the court or his assistant and service may be made by a local or state police officer. It shall describe such property with reasonable certainty and state when and where and why the same was seized. If the owner of such property or any person claiming any interest in the same appears, he shall be made a party defendant in such case. Any state's attorney or prosecuting attorney may appear and prosecute such complaint, and,

The evidence is undisputed and conclusively establishes the following facts: On March 30, 1967, Sergeant Morton Denerstein, a member of the state police department assigned to the criminal intelligence unit, observed one Gullette using the Mercury station wagon to make stops at different locations for the purpose of carrying on or engaging in gambling activities. Accordingly, on that date, an application, supported by affidavit, was made for a search and seizure warrant and presented to a judge of the Circuit Court for authority to search "a 1960 Mercury station wagon, color white, bearing Conn. Reg. UM-358, listed to John W. Cody, 42 Louis St., Trumbull, Conn.," and for "slips tokens, papers, books, wagers, bets, policy bets, records or registers of bets or wagers, appliances or apparatus used for such purpose, monies, records and other gambling paraphernalia [which] is possessed, controlled, designed or intended for use as a means of committing the crime of policy [playing] in violation of § 53-298 of the General Statutes." The judge before whom the application was made was satisfied that grounds

if the judge or court finds the allegations made in such complaint *to be true and that the property has been kept with intent to violate or in violation of any of the criminal laws of this state,* he or it shall render judgment that such property is a nuisance and order the same to be destroyed or disposed of to a charitable or educational institution or to a governmental agency or institution. Final destruction or disposal of such property shall not be made until any criminal trial in which such property might be used as evidence has been completed. When any money or valuable prize has been seized upon such warrant and condemned under the provisions of this section, such money or valuable prize shall become the property of the state. If the judge or court finds the allegations not to be true or that the property has not been kept with intent to violate or in violation of the criminal laws of this state *or that it is the property of a person not a defendant,* he shall order the property returned to the owner forthwith and the party in possession of such property pending such determination shall be responsible and personally liable for such property from the time of seizure and shall immediately comply with such order. Failure of the state to proceed against such property in accordance with the provisions of this section shall not prevent the use of such property as evidence in any criminal trial." (Italics supplied.)

existed for the application and found probable cause for the issuance of the search and seizure warrant. On March 31, 1967, at a parking lot adjacent to Barker's Department Store, in the city of Bridgeport, police officers observed a female passenger in another vehicle pass a white envelope to the operator of the white Mercury station wagon, and, acting under the authority of the warrant, the officers searched the station wagon and found one brown paper package containing thirty-seven policy slips. The operator and sole occupant of the station wagon was Gullette. He was arrested and was subsequently convicted of the crime of policy playing. At the time of the execution of the warrant, in addition to the package containing policy slips the police officers seized the vehicle. Gullette's function was that of a "pick-up man," and the use of an automobile is an essential part of the overall gambling operation. In the argot of the gambling world, the term "pick-up man" is applied to the person who serves as a conduit in transporting the bets from a "writer" to a "banker."[2]

It is clear from the finding that the defendant voluntarily entrusted possession of his automobile to Gullette, although the defendant had no knowledge, and no reason to believe, that the automobile would be used for any purpose in violation of our laws. The trial court, after a full hearing, found

---

[2] A fuller description of the roles played by these individuals is given by the Supreme Court of the United States in *United States* v. *Calamaro*, 354 U.S. 351, 353: "A numbers game involves three principal functional types of individuals: (1) the 'banker,' who deals in the numbers and against whom the player bets; (2) the 'writer,' who, for the banker, does the actual selling of the numbers to the public, and who records on triplicate slips the numbers sold to each player and the amount of his wager; and (3) the 'pick-up man,' who collects wagering slips from the writer and delivers them to the banker. If there are winnings to be distributed, the banker delivers the required amount to the writer, who in turn pays off the successful players."

that the defendant's automobile was being used as a device to enable Gullette to carry out his function as an integral part of the wagering operation, although the defendant "did not know of his knowledge the occupation of said Gullette." The court concluded that the vehicle was a nuisance, ordered its confiscation, and declared it to be the property of the state.

The assignment of errors presents three basic issues: (1) whether the defendant, as owner, has the requisite standing to raise infirmities, if any, in the search and seizure warrant; (2) whether lack of knowledge on the part of the defendant of the use to which his automobile was put is immaterial; and (3) the construction to be given to the italicized portion of § 54-33g.[3]

I

FORFEITURE PROCEEDINGS

"The point of beginning is an understanding of the nature of a forfeiture. *J. W. Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U.S. 505, . . . makes clear that the . . . [state], in the exercise of its constitutional power, has long imposed responsibilities on the owners and other persons having interests in particular personal property, in aid of the administration of criminal law, by ascribing to such property itself 'a certain personality, a power of complicity and guilt in the wrong' (254 U.S. at 510 . . .). Mr. Justice McKenna pointed out that such legislation finds an analogy in 'the law of *deodand* by which a personal chattel that was the immediate cause of the death of any reasonable creature was forfeited' (254 U.S. at 510 . . .). Blackstone was cited in *J. W. Goldsmith, Jr.-Grant* and his refer-

---

[3] See note 1, supra. We have italicized the portion of the statute which is the subject of one of the defendant's assignment of errors.

ence to the Mosaical law was quoted: 'If an ox gore a man that he [shall] die, the ox shall be stoned, and his flesh shall not be eaten.' It was also there noted that Blackstone made reference to the equally ancient Athenian law which provided that 'whatever was the cause of a man's death, by falling upon him, was exterminated or cast out of the dominions of the republic' (254 U.S. 511 . . .). When this ancient concept is recalled, our understanding of the law of forfeiture of chattels is more easily understood." *United States* v. *One 1963 Cadillac Coupe de Ville Two-Door,* 250 F. Sup. 183, 185. "Forfeiture of vehicles," said Mr. Justice Cardozo in *General Motors Acceptance Corporation* v. *United States,* 286 U.S. 49, 56, ". . . is one of the time-honored methods adopted by the Government for the repression of . . . crime . . . ," and he added (p. 57): "The penalty is at times a hard one, but it is imposed by the statute in terms too clear to be misread." See also Holmes, The Common Law, pp. 24–25.

The statute we are considering, § 54-33g, "is not a criminal statute, but provides for a civil action *in rem* for the condemnation and forfeiture of the car which was used in violation of the law. *Pickett, Pros. Atty.,* v. *Marcucci's Liquors* [112 Conn. 169] . . . . In such an action the guilt or innocence of the owner of the vehicle is not in issue. The only issue is whether the vehicle was used in violation of law. This follows from the nature of the action which is one against the *res,* an action *in rem.*" *Alcorn* v. *Alexandrovicz,* 112 Conn. 618, 623; see *State* v. *Rosarbo,* 2 Conn. Cir. Ct. 399, 402; 37 C.J.S., Forfeitures, § 5(e); 23 Am. Jur., Forfeitures and Penalties, § 6. "Overwhelming authority unequivocally holds that the essential facts must be established by a preponderance of the evidence and not beyond a reasonable doubt." *One 1961 Lincoln Continental Sedan* v. *United States,* 360 F.2d 467, 469.

## II

### Standing

"Familiar to all lawyers is the requirement of standing to raise a constitutional issue." Edwards, "Standing to Suppress Unreasonably Seized Evidence," 47 Nw. U.L. Rev. 471; see *State* v. *Schaffel,* 4 Conn. Cir. Ct. 234, 245; notes, 96 L. Ed. 66, 70; 78 A.L.R.2d 246, 255. "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of the evidence gathered as a consequence of a search or seizure directed at someone else." *Jones* v. *United States,* 362 U.S. 257, 261. "Immunity from unreasonable search, guaranteed by the Fourth Amendment, is a personal right." *Coon* v. *United States,* 36 F.2d 164, 165. "The immunity of the Fourth Amendment may not be invoked by the claimants because they were not the victims of the unlawful search and seizure. The immunity is personal and may be invoked only by the person whose rights are invaded." *United States* v. *One 1948 Cadillac Convertible Coupe,* 115 F. Sup. 723, 728. "[T]he federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized." *Goldstein* v. *United States,* 316 U.S. 114, 121;[4] see *Jeffers* v. *United States,* 187 F.2d 498, 500.

---

[4] In a footnote (p. 121, n.12) the court said: "The principle has been applied in at least fifty cases by the Circuit Court of Appeals in nine circuits, and in the Court of Appeals for the District of Columbia, not to mention many decisions by District Courts. Many of the cases are collected in Note 168 to the text of the Fourth Amendment in the United States Code Annotated."

As the rights of the defendant were not invaded, he cannot complain. "He cannot vicariously assert the constitutional rights of others who do not complain." *Curry* v. *United States,* 192 F.2d 571, 572.

We hold that the defendant lacks the requisite standing to raise infirmities, if any, in the search and seizure warrant.

## III

### INNOCENCE OF THE OWNER

In *United States* v. *One 1940 Packard Coupe,* 36 F. Sup. 788, 790, the District Court, in considering a libel for the forfeiture of counterfeit coins, said: "This is a proceeding in rem, against the car, in which the law ascribes to it a power of complicity and guilt in the offense. And in light of the authorities, it is now too late to attempt a construction of the statutes here involved as exempting from forfeiture the interest of a person in a chattel for the reason that he was guiltless. It is no longer necessary to quote in support of this well established doctrine the common law as to deodands or the Mosaic law as to the punishment inflicted upon an ox which gores a man." "It is the illegal use that is the material consideration, it is that which works the forfeiture, the guilt or innocence of its owner being accidental." *J. W. Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U.S. 505, 513; see *Busic* v. *United States,* 149 F.2d 794, 795. "The forfeiture is a method deemed by the Legislature necessary to restrain the commission of an offense and to aid in its prevention. For this reason courts have upheld the condemnation and forfeiture of property used for illegal purposes although the user was acting without authority from the true owner, without right, contrary to the wishes of that owner, and while the latter was ignorant of the use." *Common-*

*wealth* v. *Certain Motor Vehicle,* 261 Mass. 504, 508; see *Van Oster* v. *Kansas,* 272 U.S. 465, 468; *J. W. Goldsmith, Jr.–Grant Co.* v. *United States,* supra, 512; *State* v. *Richards,* 157 Tex. 166, 170.

Under usual forfeiture provisions, the owner's innocence is no defense to the confiscation of property of his used illegally by one entrusted with its possession. The source of the oft-repeated judicial indifference to an owner's innocence or guilt lies in the in rem character of the forfeiture proceedings. See *United States* v. *One Ford Coupe Automobile,* 21 F.2d 639, 640; *United States* v. *One Model H Farmall Tractor,* 51 F. Sup. 603, 605. Dispensing with judicial inquiry into the guilt or innocence of the owner has been justified upon legislative determination that evasions of persistently violated statutes are so undesirable that the law throws upon owners the risk of surrendering control over vehicles of theirs instrumental in perpetrating the crime. "[C]ertain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril. The law thus builds a secondary defense against a forbidden use and precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent owner." *Van Oster* v. *Kansas,* supra, 467.

We hold that since the "owner parts with *possession* at his peril"; *People* v. *One 1937 Buick Coupe,* 89 Cal. App. 2d 556, 561; innocence of the owner is immaterial in this in rem proceeding.[5]

---

[5] The rule has been criticized as harsh. See, for example, Black, "Some Prohibition Forfeiture Cases—The Doctrine of Vicarious Liability," 78 U. Pa. L. Rev. 518; McDonald, "Automobile Forfeitures and the Eighteenth Amendment," 10 Tex. L. Rev. 140; comment, "Forfeiture of Property Used in Illegal Acts," 38 Notre Dame Law, 727.

## IV

### THE STATUTE (§ 54-33g)

Courts have always declared that the power to declare any forfeiture is solely statutory. *Ghisolfo* v. *United States,* 14 F.2d 389, 390; *United States* v. *Charles D. Kaier Co.,* 61 F.2d 160, 162. Proceedings by the state to forfeit an automobile must follow all the statutory requirements. Cornelius, Search and Seizure § 443, p. 882. "Statutes providing for the forfeiture of property are ordinarily of one of two classes: One authorizing forfeiture irrespective of ownership and without regard to the owner's culpability or the interest of other parties, except as special provision is expressly made therefor, and the other making ownership of the wrongdoer and his culpability a necessary element." 37 C.J.S. 8, Forfeitures, § 4 (a). Our statute, § 54-33g, declares that "[w]hen . . . any property has been seized, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section," notice of the seizure and intended forfeiture must be given the owner and claimants in order to afford them an opportunity to be heard. The notice must describe the property seized with reasonable certainty and state when and where and why the same was seized. And if the owner or claimant appears, "he shall be made a party defendant *in such case*" (italics supplied). Thus, the legislature contemplated that in the administration of the statute the rights of owners and claimants would be involved, and it carefully guarded their interests. Also, under the statute, if the judge or court finds that the allegations in the in rem proceeding are true and that the offending property has been kept with intent to violate or in violation of any of the criminal laws of this state, provision is made for the disposition of the property. On the other hand, if the judge or court finds

the allegations in the in rem proceeding not to be true and that the property has not been kept with intent to violate or in violation of the criminal laws of this state, the property is returned to the owner.

The machinery of § 54-33g, relating to forfeiture of offending property, was closely and carefully followed in this case.

The defendant claims that this in rem proceeding must fail because he was not a defendant in the criminal action. We do not so construe the statute. It is evident from the language of the statute that the word "defendant," as used in the portion of the statute which we have italicized,[6] means a defendant in the in rem proceeding, not a defendant in the substantive criminal prosecution.

There is no error.

In this opinion KOSICKI and KINMONTH, Js., concurred.