STATE OF CONNECTICUT *v.* JOSEPH BUCCHIERI

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued October 17—decision released December 19, 1978

*Michael J. Roach,* of the District of Columbia bar, tax division attorney, United States Justice Department, with whom were *Frank N. Santoro,* assistant United States attorney, and, on the brief, *Richard Blumenthal,* United States attorney, *M. Carr Ferguson,* assistant United States attorney, and *Gilbert E. Andrews* and *Crombie J. D. Garrett,* tax division attorneys, United States Justice Department, for the appellant (defendant United States of America).

*Donald B. Caldwell,* state's attorney, for the appellee (state).

PETERS, J. This case arises out of competing claims to funds seized by Coventry police on February 1, 1972, pursuant to a search warrant authorizing a search of a house in that town. The search netted $4718.11 in cash, along with a quantity of drug paraphernalia.[1] On the day of the search the Circuit Court from which the warrant had been issued instituted an *in rem* proceeding for adjudication of the seized articles as a nuisance, pursuant to General Statutes § 54-33g.[2] Some five months

---

[1] Only the cash that was seized is presently in dispute.

[2] "[General Statutes] Sec. 54-33g. SUMMONS TO OWNER ON SEIZURE OF PROPERTY. IN REM ACTION FOR ADJUDICATION AS NUISANCE. When pursuant to subdivision (1) of subsection (b) of section 54-33a any property has been seized, which the state claims to be a nuisance and desires to have destroyed or disposed of in accordance with the provisions of this section, the judge or court issuing the warrant shall, within ten days after such seizure, cause to be left with the owner of, and with any person claiming of record a bona fide mortgage, assignment of lease or rent, lien or security interest in, the property so seized, or at his usual place of abode, if he is known, or, if unknown, at the place where the property was seized, a summons notifying the owner and any such other person claiming such interest and all others whom it may concern to appear before such judge or court, at a place and time named in such notice, which shall be not

later, on June 30, 1972, the United States filed notices of tax liens against Joseph Bucchieri and Andrew Field, codefendants on drug charges that had resulted from the search of the Coventry premises. Notices of the tax levies were served on the chief of police of the town of Coventry on July 3, 1972, at that time the custodian of the funds seized in the February 1, 1972, raid. Subsequently, in April, June, and November of 1973, several proceedings were held in the Superior Court to adjudicate rights to the seized funds. Ultimately the order presently on appeal was entered; it determined that the claim of the state of Connecticut

less than six nor more than twelve days after the service thereof, then and there to show cause why such property should not be adjudged a nuisance and ordered to be destroyed or otherwise disposed of as herein provided. Such summons may be signed by a clerk of the court or his assistant and service may be made by a local or state police officer. It shall describe such property with reasonable certainty and state when and where and why the same was seized. If the owner of such property or any person claiming any interest in the same appears, he shall be made a party defendant in such case. Any state's attorney or prosecuting attorney may appear and prosecute such complaint, and, if the judge or court finds the allegations made in such complaint to be true and that the property has been possessed, controlled or designed for use, or is or has been or is intended to be used, with intent to violate or in violation of any of the criminal laws of this state, he or it shall render judgment that such property is a nuisance and order the same to be destroyed or disposed of to a charitable or educational institution or to a governmental agency or institution provided, if any such property is subject to a bona fide mortgage, assignment of lease or rent, lien or security interest, such property shall not be so destroyed or disposed of in violation of the rights of the holder of such interest. Final destruction or disposal of such property shall not be made until any criminal trial in which such property might be used as evidence has been completed . . . . When any money or valuable prize has been seized upon such warrant and condemned under the provisions of this section, such money or valuable prize shall become the property of the state, provided any such property, which at the time of such order is subject to a bona fide mortgage, assignment of lease or rent, lien or security interest shall remain subject to such mortgage, assignment of lease or rent, lien or

under § 54-33g was entitled to priority over the claim of the United States of America under § 6321 of the Internal Revenue Code.[3]

The United States, the appellant, has framed the issue on appeal as a question of priority in time: Was the currency seized in the narcotics raid effectively forfeited to the state of Connecticut prior to the time that a federal tax lien attached to all of the taxpayers' property, even though there had been no judicial determination of forfeiture at the time the federal tax lien arose? This statement of the issue presupposes appropriate resolution of a threshold question that must first be addressed: Was the property to which the federal tax lien attached the property of the taxpayers? Until it

security interest. When any property or valuable prize has been declared a nuisance and condemned under this section, the court may also order that such property be sold by sale at public auction in which case the proceeds shall become the property of the state; provided, any person who has a bona fide mortgage, assignment of lease or rent, lien or security interest shall have the same right to the proceeds as he had in the property prior to sale. If the judge or court finds the allegations not to be true or that the property has not been kept with intent to violate or in violation of the criminal laws of this state or that it is the property of a person not a defendant, he shall order the property returned to the owner forthwith and the party in possession of such property pending such determination shall be responsible and personally liable for such property from the time of seizure and shall immediately comply with such order. Failure of the state to proceed against such property in accordance with the provisions of this section shall not prevent the use of such property as evidence in any criminal trial."

[3] "[Title 26, United States Code § 6321] LIEN FOR TAXES. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

This priority contest involves *only* I.R.C. § 6321; there are no allegations that the taxpayers are insolvent so as to allow the United States to invoke Rev. Stat. § 3466 (1875), 31 U.S.C. § 191.

is established that the funds seized were funds in which the taxpayers Bucchieri and Field had property rights, the United States as lienholder has no claim to the funds. Whether taxpayers have "property" or "rights to property" to which the tax lien may attach is a question of state law on which the United States has the burden of proof. *Aquilino* v. *United States,* 363 U.S. 509, 512–14, 80 S. Ct. 1277, 4 L. Ed. 2d 1365 (1960); *United States* v. *Bess,* 357 U.S. 51, 55, 78 S. Ct. 1054, 2 L. Ed. 2d 1135 (1958); Plumb, Federal Tax Liens 27–30 (3d Ed. 1972). Only after it has been determined that a lien has attached to a state-created interest does federal law come into play to determine the priority of competing liens asserted against the same property. *Aquilino* v. *United States,* supra, 514.

The record below established very little with specificity concerning the ownership of the seized currency. At the time of the raid, some of the money was found on the person of Bucchieri, and some of it was found in the room in the Coventry house occupied by Bucchieri and Field. Bucchieri himself, however, twice disclaimed, through counsel, any interest in the money, once on the occasion of his plea of guilty to sale and possession of a controlled drug, and again on the occasion of the April, 1973, hearing in the *in rem* proceeding. The trial court's memorandum of decision indicates that Field, Bucchieri's codefendant,[4] and a cotaxpayer, also made an in-court disclaimer to the currency. The Coventry house was owned by someone other than Bucchieri or Field; whether and to what extent the landlord had access to Bucchieri and Field's room is entirely unclear. The affidavit and application for the search warrant do indicate that the premises

---

[4] The charges against Field were nolled on April 4, 1973.

were the site of at least one illegal drug sale by a person other than Bucchieri or Field. Although the record would seem to indicate that Bucchieri was engaged in drug traffic for profit, the United States made no request for the taking of evidence to determine whether the money seized pursuant to the search warrant was money derived from the sale of controlled drugs. Nor did the United States offer any other proof of Bucchieri's title to any of the money seized. As counsel for the United States candidly conceded at oral argument, the United States simply assumed that the currency belonged to Bucchieri and Field because of the place where it was found and because no one else had asserted a claim of ownership. Assumptions are no substitute for findings.[5]

In this state of the record, the United States has certainly not yet established the taxpayer property rights that are a prerequisite to its priority claim. We could, on this basis, affirm the judgment below, since the United States had the opportunity to participate and did participate in a hearing designed to adjudicate competing claims to the fund in dispute. It seems clear, however, that in the proceedings below the issue of ownership was never squarely addressed by anyone. The state's primary concern, in the adjudication of property as a nuisance under § 54-33g, is to show that the property "has been possessed, controlled or designed for use . . . with intent to violate or in violation of any of the criminal laws of this state." The state's case focuses on use for an illegal purpose, rather than on ownership. As this court said with regard to

---

[5] Although the United States could have moved to supplement or correct the findings on the issue of ownership of the seized money; Practice Book §§ 3034-3035, 3038-3039; it failed to do so.

a predecessor statute, now repealed, dealing with seizure of intoxicating liquor, "[t]his statute is not a criminal statute, but provides for a civil action *in rem* for the condemnation and forfeiture of the [property] which was used in violation of the law. . . . In such an action the guilt or innocence of the owner of the [property] is not in issue. The only issue is whether the [property] was used in violation of law. This follows from the nature of the action which is one against the *res,* an action *in rem." Alcorn* v. *Alexandrovicz,* 112 Conn. 618, 623, 153 A. 786 (1931); see *State* v. *One 1960 Mercury Station Wagon,* 5 Conn. Cir. Ct. 1, 240 A.2d 99 (1968).

The trial court specifically found that at the relevant hearing on November 15, 1973, and in the briefs subsequently submitted, both parties limited their claims to the question of priority. Apparently the state was prepared to presume, having followed the statutory requisites as to notice and in the absence of evidence to the contrary, that the property was contraband, while the United States was prepared to indulge in a similar presumption concerning ownership. The trial court acted on the first presumption, concluding that the seized currency was money derived from the sale of controlled drugs, and hence contraband subject to forfeiture under the state statute.[6] The trial court, however, reached no conclusions whatsoever on the question of ownership. It seems reasonable to remand this case for further proceedings to determine this crucial question.

If upon remand the United States is able to prove that the seized currency was the property of

[6] Although the United States initially assigned these conclusions as error, the arguments were not briefed and hence are considered abandoned. *State* v. *Brown,* 169 Conn. 692, 706, 364 A.2d 186 (1975).

Bucchieri and Field,[7] the issue of priority between the claim of the state under § 54-33g and the claim of the United States under I.R.C. § 6321 must be resolved. The court below did address this issue, and concluded that the state was entitled to priority because seizure of the property as contraband by initiation of the *in rem* proceeding antedated the attachment of the federal tax lien. The United States assigned this conclusion as error, and the issue has been fully briefed and argued. In light of the likelihood of a rehearing, it is appropriate to resolve this claim of error now. *Thomas* v. *Arafeh,* 174 Conn. 464, 467, 391 A.2d 133 (1978); *Loewenberg* v. *Wallace,* 147 Conn. 689, 694, 166 A.2d 150 (1960); Maltbie, Conn. App. Proc. § 341.

The priority of federal tax liens as against liens created under state law is governed generally by the common-law rule that "first in time is first in right." *United States* v. *Equitable Life Assurance Society of the United States,* 384 U.S. 323, 327, 86 S. Ct. 1561, 16 L. Ed. 2d 593 (1966); *United States* v. *Pioneer American Ins. Co.,* 374 U.S. 84, 87, 83 S. Ct. 1651, 10 L. Ed. 2d 770 (1963); *United States* v. *New Britain,* 347 U.S. 81, 85–86, 74 S. Ct. 367, 98 L. Ed. 520 (1954). See 2 Gilmore, Security Interests in Personal Property § 40.3, p. 1054 (1965). Some specific exceptions to this general rule have been carved out by the Federal Tax Lien Act of 1966 in its amendments to I.R.C. § 6323, but the state has not suggested that its claim to priority should shelter under any of these special exemptions. In the ordinary case, the federal lien arises, under

---

[7] There may also arise the problem of allocation of the fund between Bucchieri and Field, since the tax lien against each individually was in the amount of $3706.75, while the seized property totalled $4718.11.

I.R.C. § 6322, when the tax is assessed, while the state lien arises when it is specific and perfected, or choate. *United States* v. *Equitable Life Assurance Society of the United, States,* supra, 327; *United States* v. *Pioneer American Ins. Co.,* supra, 88; *United States* v. *New Britain,* supra, 84. The determination of when a state interest has become sufficiently choate to defeat a later-arising federal tax lien is a matter of federal and not of state law. *United States* v. *Equitable Life Assurance Society of the United States,* supra, 328; *United States* v. *Pioneer American Ins. Co.,* supra, 88; *Aquilino* v. *United States,* 363 U.S. 509, 513–14, 80 S. Ct. 1277, 4 L. Ed. 2d 1365 (1960); *United States* v. *New Britain,* supra, 84. See Plumb, Federal Tax Liens 27–30 (3d Ed. 1972).

In the case before us, these principles translate into the following question: Did the state's claim to the seized currency immediately become choate at the time of the institution of the *in rem* proceeding on February 1, 1972, so as to antedate the federal tax lien that attached on June 28, 1972; or did it first become choate after the hearing on the *in rem* proceeding on April 26, 1973, and thus postdate the federal lien?

The test that determines, under federal law, whether a state interest competing with a federal tax lien is sufficiently choate is that the competing interest must be "perfected in the sense that there is nothing more to be done to have a choate lien— when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States* v. *New Britain,* supra, 84. This language has been cited repeatedly in subse-

quent cases in the United States Supreme Court. Plumb, Federal Tax Liens 149–50 (3d Ed. 1972); 2 Gilmore, Security Interests in Personal Property 1054 (1965). The time when a state interest is perfected as against local levying creditors is not dispositive as to choateness; an otherwise effective attachment lien, for example, is always inchoate until the time of judgment, and can be defeated by an intervening recorded tax lien. *United States* v. *Security Trust & Savings Bank*, 340 U.S. 47, 50, 71 S. Ct. 111, 95 L. Ed. 53 (1950).

The *in rem* proceedings under § 54-33g are difficult to align with the case law on state liens because § 54-33g provides for forfeiture rather than for a lien. The *in rem* proceedings are instituted *ex parte* to seize outright designated property that has been taken as contraband pursuant to a search warrant. A hearing is afforded, as required by constitutional principles of procedural due process, so that interested parties may contest whether the property was in fact "possessed, controlled . . . or . . . used, with intent to violate or in violation of any of the criminal laws" of the state. The purpose of the state's seizure is not to establish a lien to facilitate collection of moneys owed to the state, but rather to exercise the sovereign power to forfeit property shown to have been involved in an illegal enterprise. In determining when the state's interest has become choate, we must bear in mind the purpose of the state's exercise of its sovereign power of forfeiture as well as the procedure that the state has devised for the manifestation of its interest. The state's reliance on *United States* v. *Vermont*, 377 U.S. 351, 355, 84 S. Ct. 1267, 12 L. Ed. 2d 370 (1964), is therefore not totally apposite. True, *United States* v. *Vermont* is one of the very few cases in recent

history[8] in which a state interest was held by the United States Supreme Court to be sufficiently choate to survive challenge by a subsequent federal tax lien. *United States* v. *Vermont* is noteworthy for its holding that a state-created lien may be valid when it attaches to all, rather than to specifically designated portions, of a taxpayer's property. It is consistent with a conclusion that a state may have the power effectively to exclude property from a federal lien, but it gives little guidance whether in this case, under this statute, this state has exercised such power.

In a case of first impression like this one, it is helpful to consult the holdings of other courts, and the opinions of the textwriters. There are, as far as we can discover, no cases definitively interpreting statutes that, like § 54-33g, couple an immediate forfeiture with a subsequent hearing that may result in reclamation of the forfeited property in whole or in part. Some twenty years ago, the United States Court of Appeals for the Third Circuit, while noting the difficulty of the case, expressed in dictum grave doubt that a federal tax lien could attach to property in the possession of the state after its seizure as contraband. *United States* v. *Bleasby*, 257 F.2d 278, 279–80 (3d Cir. 1958). Judge Hastie in *Bleasby* characterized as "extraordinary" the effort by the federal government to impose its lien on property already in the possession of the state government pursuant to the latter's "sovereign claim of right to keep it in furtherance of its criminal laws." In

---

[8] The last case prior to *United States* v. *Vermont* to give local liens priority over a federal tax lien was *United States* v. *New Britain*, 347 U.S. 81, 74 S. Ct. 367, 98 L. Ed. 520 (1954), in which specific, perfected municipal liens for real estate taxes and water rent were held prior to a general, perfected United States tax lien on the theory of "first in time, first in right."

a similar vein, William T. Plumb, Jr., the leading textwriter on federal tax liens, takes the position that seizure and forfeiture of property under state law leaves the taxpayer with no property to which a subsequent federal tax lien can attach, whether or not judicial proceedings are required to finalize the forfeiture. In his view, whatever judicial proceedings are had are at best analogous to third-party claims of title whose pendency would not postpone the attachment of a lien to the affected property. Plumb, Federal Tax Liens 185–87 (3d Ed. 1972).

The problem with these arguments in favor of the state's priority is that they assume the very points that are ultimately at issue. To what extent in fact is the state's "sovereign claim of right" inconsistent with the federal assertion of a tax lien? To what extent in fact has the state exercised its power of forfeiture by the mere initiation of *ex parte* proceedings to declare property a nuisance?

The sovereign claim of the state in seizing contraband property must be measured by the purpose forfeiture is intended to serve. That purpose is, clearly, to deprive potential (and actual) criminals of access to useful property, and hence to deter crime. In no way is that purpose the enrichment of the coffers of the state treasury. As the text of § 54-33g states, the normal disposition of property declared to be a nuisance under the statute is that the property "be destroyed or disposed of to a charitable or educational institution or to a governmental agency or institution." The property is to be taken *from* criminals *by* the state but not *for* the state. It is only because the contraband in the present case happened to be cash that the normal course of disposition has apparently not been followed. The

liquidity of this property undoubtedly accounts also for the federal interest in attaching it. Yet it is undeniable that the state is claiming what is in effect a windfall, while the federal government is pursuing ordinary means, albeit through jeopardy assessments,[9] to collect ordinary taxes in the ordinary course of Internal Revenue Service business. The federal lien interferes in no perceptible way with any state policy under the state forfeiture statute.

The absence of a fundamental conflict of policy between the state and the United States should not of course lead us to characterize as inchoate a state interest that under state law has fully vested at a time antedating the federal tax lien. The provisions of § 54-33g hardly comport, however, with an overriding legislative intent to characterize as final an *ex parte* proceeding to declare property contraband, when the section itself provides for a hearing at which competing claims may be heard and at which forfeiture is to be adjudicated. Connecticut law has never recognized any inherent right of forfeiture apart from statute. *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 11 A.2d 863 (1940); *State* v. *Rosarbo,* 2 Conn. Cir. Ct. 399, 199 A.2d 575 (App. Div. 1963). In recent years this court, like others, has become increasingly sensitive to the significance of hearings that afford participants a meaningful opportunity to challenge seizures, under state law, of private property. See *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778 (1975), cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50

---

[9] The jeopardy assessment provision of the Internal Revenue Code is I.R.C. § 6861, 26 U.S.C. § 6861.

L. Ed. 2d 172 (1976). In light of this trend, we should not devalue the hearing mandated by § 54-33g as insignificant in the determination of when state rights attach. If the hearing and the resultant adjudication seriously matter, as constitutionally they must, the state cannot be deemed to have acquired a fully matured, choate right in the seized property until that time.

For these reasons, we conclude that the court below was in error in its conclusion that forfeiture under § 54-33g of the General Statutes occurs as of the time the property becomes contraband because of its illegal use. Even though state seizure of the property may effectively remove the property from the claims of its owners, or those who take under its owners, the state's claim is incomplete and hence inchoate until forfeiture has been adjudicated after interested parties have had an opportunity to be heard. For other purposes, adjudication may enable the state's claim to relate back to the time of initial seizure. Under the governing federal law, however, an intervening federal tax lien takes precedence over the state lien which is not yet fully choate. *United States* v. *Security Trust & Savings Bank,* 340 U.S. 47, 50, 71 S. Ct. 111, 95 L. Ed. 53 (1950). Whether in this case the United States will be entitled to the currency seized in the Coventry drug raid will depend upon its ability to prove, upon remand, that the moneys were the property of its taxpayers, Bucchieri and Field.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.