[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR DEFICIENCY JUDGMENT
Before the court is a Motion for Deficiency Judgment which was heard on two separate days in December, concluding on December 21, 1992. The judgment debt on the date of the foreclosure was $182,844.78 plus $5250.00 allowed attorney's fees, together with a $150.00 allowance for title search fees and $450.00 for the appraiser, Charles Pritchard. Art additional $675.00 in costs were CT Page 1195-A taxed by the clerk on May 20, 1991.
The parties are in dispute about the value of the premises foreclosed as of the June 17, 1991 date of vesting of title. At the hearing on the motion, the plaintiff offered evidence through an appraiser, Charles Pritchard, that the value was $166,000.00. The defendant Zaniewski offered evidence from William McCarthy that the value was $185,000.00 as of the June 17, 1991 date of vesting of title.
The court finds the value was $166,000.00. The court finds the plaintiff's appraisal testimony credible. Although the defendant's appraiser has a wide experience, the court does not credit his opinion as to this premises. He had not seen the interior of the premises; he ascribed greater value in the marketplace to the fact that as a part of a planned unit development the owner of the unit individually owned the pad beneath it but provided no market data to support such a view; he contended market prices for such units had stabilized in the summer of 1990, yet other evidence the court finds credible indicated they did not become stable but continued to deteriorate. CT Page 1195-B
This was an adjustable rate mortgage and at the hearing on the deficiency judgment, the defendant Zaniewski and the plaintiff bank were at odds initially over whether the interest rate on judgments, which is set by statute at ten (10%) percent, or the interest rate set in the adjustable note and mortgage prevailed. The court rules that the interest rate applicable is the note rate, not the statutory ten (10%) percent rate on judgments. If the note rate was to be applied, the parties were further in dispute as to which note rate applied: the 9.46% rate which was in effect on the date of judgment and also on the subsequent date of vesting of title or the 10.57% rate which was in effect at the time the loan first went into default. Zaniewski claims and the court agrees that the lower rate applies, which was in effect at the time of judgment and vesting of title in the plaintiff. By statute, the rate of interest is set by the "legal rate" of' ten percent, "unless otherwise provided by agreement." See General Statutes 37-1 and37-3a. Connecticut law has interpreted these two statutes together to read that if the parties agree upon a rate of interest until the balance is paid, then the agreed on rate becomes the legal rate in the case. Little v. United National Investors Corp., 160 Conn. 534, CT Page 1195-C 537-38, 280 A.2d 890 (1971); Reynolds V. [v.] Ramos, 188 Conn. 316,321-22 (1982).
The note provided in pertinent part that:
 Interest will be charged on that part of principal which has not been paid beginning on the date I receive principal and continuing until the full amount of principal has been paid. . . .
 The interest rate required by this Section and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. (Emphasis added.)
The court finds that the note rate applies not the legal rate. The court further holds that the applicable rate of interest is the floating rate in effect at the time of judgment and the date of vesting of title which was 9.46%, and not the higher rate in effect at the time of the first default in loan payments as the plaintiff contends. CT Page 1195-D
The defendant Zaniewski also took issue with that portion of the debt claimed for condominium charges paid.
The court in Hudson House Condominium Ass'n., Inc. v. Brooks,223 Conn. 610, 614, held:
 Liens for delinquent common expense assessments on individual units within an association are creatures of statute. Section 47-258(a) provides: "The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes delinquent". . . .
 In addition to creating the lien and authorizing its foreclosure, 47-258, contrary to the tenet that the priority of liens is governed by the common law rule that first in time is first in right; State v. Bucchieri, 176 Conn. 339, 346, 407 A.2d 990 (1978); carves out an exception and grants a priority to the lien for common CT Page 1195-E expense assessments. The priority, however, is temporally limited by 47-258(b) to the amount "of the common expense assessments . . . which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce . . . the association's lien. . . ." (Emphasis in original. )
Defendant Zaniewski claims the lien must be recorded to be prior and thus these payments cannot be added to the mortgage debt. That is not our law. The lien is inchoate. It need not be recorded to be prior to the mortgage. Hudson House, supra. However, in this case the court has no evidence before it from which it could conclude that the payments actually made were temporally ones which covered billings which would have become due in this absence of acceleration during the six months immediately prior to the commencement of foreclosure for which the condominium association had a lien. Therefore these sums will not be added to the mortgage debt nor will the defendants be held to pay them as part of a deficiency. CT Page 1195-F
The defendant Zaniewski also took issue with that portion of the debt claimed by the plaintiff to relate to taxes paid in the amount of $1644.42. Section 12-172 of the General Statutes provides in pertinent part that:
 The interest of each person in each item of real estate, which has been legally set in his assessment list, shall be subject to a lien for that part of his taxes laid upon the valuation of such interest, as found in such list when finally completed, as such part may be increased by interest, fees and charges, . . . . Such lien, unless otherwise specially provided by law, shall exist from the first day of October or other assessment date of the municipality in the year previous to that in which such tax or first instalment thereof became due and, during its existence, shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it.
Despite the defendant's contentions otherwise, it is clear CT Page 1195-G from the statute that a city has a lien, albeit inchoate, from the date of assessment not from the date of recordation of a lien on the land records. Here again, there is insufficient evidence before the court as to the assessment date relating to said taxes from which to determine that these were taxes which the borrowers should have paid which were prior to the mortgage and which plaintiff had a right to add this to the mortgage debt. It therefore cannot be a part of the deficiency.
The defendant Karen S. Zaniewski took issue with that portion of the debt claimed by the plaintiff to relate to Water Pollution Control Authority charges in the amount of $200.99. Her position is that the foreclosing lender cannot add unpaid charges for sewers to the mortgage debt unless there is evidence that they constituted a prior lien on the premises. Sections 7-254(a) and (b) of the General Statutes provides that any unpaid sewer assessment shall constitute a lien upon the real estate against which the assessment was levied from the date of the levy. The question does not hinge on whether a lien was recorded in the land records as the defendant contends but on whether there was a levy of assessment which was unpaid. The court does not have sufficient evidence before it to CT Page 1195-H determine that there was such an unpaid past due levy of assessment which was prior to the plaintiff's mortgage at the time title vested absolutely on June 17, 1991. This sum will therefore not be added to the deficiency.
The defendant Zaniewski contended at the hearing on the deficiency that for the period between the judgment of foreclosure on May 6, and the vesting of title in the plaintiff on June 17 when the law days passed and none of the defendants redeemed, plaintiff was not entitled to interest on the whole judgment debt but only on the portion of the judgment debt due at that time allocable to principal in the amount of $164,235. The court rejects this view. Section 37-1(b) of the General Statutes provides that unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt. Judge Fuller issued a judgment on May 6, 1991 as to the amount of the debt. Had it been paid to the bank prior to the running of the law days this matter would have ended by that redemption then and there. When it was not, the plaintiff bank was entitled to interest at the note rate on its unpaid judgment for the total sum Judge Fuller found due. CT Page 1195-I
The plaintiff People's Bank and the defendant Zaniewski are at odds over the amount of plaintiff's attorney's fees the court should allow and award in establishing the deficiency. The plaintiff seeks $3540. The court orders $2500, taking into account that plaintiff's counsel was required to spend considerable time in establishing the deficiency.
A motion for deficiency judgment having come before the court and an evidentiary hearing having been held, the court makes the following findings:
Title vested in the plaintiff on June 17, 1991 and on said date the value of the mortgaged premises was $166,000.00. Judgment debt on date of foreclosure was . . . . . . . . . . . $182,844.78 Attorney's fees allowed to plaintiff at judgment were . . . . $ 5,250.00 ____________ Subtotal . . . . . . . . . . . . . . . . . . . . . . . . . . . $188,094.78 Interest from May 6, 1991, the date of the judgment, to the date of vesting of title in plaintiff, on June 17, 1991 is . . . . . . . . . . . . . . . . . . . . . . . . $1,989.96 CT Page 1195-J Interest from date of title of vesting to date of deficiency judgment on the amount of the deficiency original debt less value of property . . . . . . . . . . . . . . $4,398.05 ($188,094.78 — $166,000.00 = $28,094.78 x 9.46%) Additional attorney's fees allowed . . . . . . . . . . . . . . . $2,500.00 Costs on original judgment . . . . . . . . . . . . . . . . . . . $1,275.20 Appraiser's fee on deficiency judgment . . . . . . . . . . . . . $ 350.00 ___________ Subtotal . . . . . . . . . . . . . . . . . . . . . . . . . . . $198,607.99 Less value of property . . . . . . . . . . . . . . . . . . . . $166,000.00 ___________ Amount of deficiency judgment . . . . . . . . . . . . . . . . . $32,607.99
Judgment is ordered to entered in favor of the plaintiff and against the defendants Pallman and Zaniewski in the amount of
FLYNN, J.