[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter involves the disposition, under Connecticut General Statutes Section 54-36a, of a large number of sports cards seized pursuant to a search warrant issued in connection with a criminal case, State v. Chad St. Louis, docket no. CR 19-46915, which criminal case went to judgment on April 29, 1993. CT Page 8644
Virginia St. Louis, mother of the accused in the criminal case, claims that the seized property, with the exception of two items previously disposed of, ought to be returned to her as the owner of the property. The state argues that evidence of her ownership is lacking and that, under Connecticut General Statutes Section 54-36a (c), (d), and/or (e), the court must order the property sold and the proceeds deposited in the general fund.
On November 9, 1991, Chad St. Louis and an accomplice burglarized Mac's Card Shop in Vernon and stole hundreds of baseball cards (State's Exhibits A, B, and E). The Vernon police investigated the burglary and developed evidence which led them to interview the accomplice, who, in turn, implicated Chad St. Louis in the crime. Based on the information available at that time, the police obtained a search warrant for 20 Slater Road, Stafford Springs, the residence of Chad St. Louis. On November 15, 1991, the search warrant was executed, and in a bedroom at that location a large quantity of sports cards were discovered and seized. The bedroom also contained correspondence and documents belonging to Chad St. Louis. At the hearing it appeared uncontested that the bedroom belonged to Chad St. Louis at the time of the search.
The victim of the burglary examined the items seized and identified two items as being part of the inventory stolen from his shop. However, the victim made and makes no claim to the remainder of the cards seized. As it turned out, unbeknownst to the police at the time the search was conducted, the victim's cards had already been sold by Chad St. Louis to various sports card dealers in Connecticut and New York.
The criminal case having concluded, the prosecuting official moves the court to order disposition, under Connecticut General Statutes Section 54-36a(c), of the property held in custodia legis. The state asserts no claim that the seized property is stolen property, contraband, or constitutes a nuisance. Rather, the state contends that the disposition of the property ought to follow the course set forth in Connecticut General Statutes Section 54-36a(d) because no owner has properly claimed the items.
 I
Subsection 54-36(c) states that, if seized property is other than stolen, contraband, or a nuisance, the court shall "order the return of such property to its owner within six months upon proper CT Page 8645 claim therefor." If no proper claim is received, then, under section 54-36(d), such "valuable prize" shall be sold at public auction or private sale, and the proceeds obtained thereby are deposited in the general fund.
On October 14, 1993, the court conducted an evidentiary hearing regarding disposition of the seized items. At the hearing Chad St. Louis made no claim to the cards. His mother, Virginia St. Louis, testified that all the cards, except for the two articles previously claimed by the burglary victim, belonged to her. She stated that she began collecting the cards long ago, and that her son, Chad, had also shown an interest in this hobby. To encourage this interest she allowed her son to acquire cards on her behalf, organize the collection, and keep the cards in his bedroom exclusively. She noted that she was uncertain as to the manner in which her son acquired cards for her benefit, whether legitimately or otherwise. Chad St. Louis was present at the evidentiary hearing and available to testify having been transported to court from his place of confinement by writ of habeas corpus. Virginia St. Louis expressly declined to call her son to testify at the hearing despite his availability.
 II
It is clear that, under section 54-36a(c), property seized as a result of the execution of a search warrant must be returned to its owner, upon disposition of any connected criminal case, unless such property is contraband or constitutes a nuisance, State v. One 1977 Buick Automobile, 196 Conn. 471 (1985), p. 478. The issues presented by this case, however, are who has the burden of proof as to claims of ownership, the standard of proof required, and whether the requisite burden has been met. The court's research discloses no reported cases directly on point with respect to these issues.
It is noted, parenthetically, that a related property disposition statute, Connecticut General Statutes Section 54-33g, in subsection (b), allocates the burden of proof as to a claim of nuisance to the state by clear and convincing evidence. Section54-33g, like section 54-36a, has no express assignment of burden of proof relative to ownership, however, and, as noted above, the state makes no claim that the cards are contraband or a nuisance.
Subsection (c) of section 54-36a does state that the order of return of property to an owner is contingent "upon proper claim therefor." Also, the word "owner" is defined by section CT Page 8646 36a(a)(3) to mean "a person entitled to seized property as a matter of law or fact." The court holds that the burden of establishing entitlement as an owner rests with the person claiming to be the owner, and the burden of proof is by a preponderance of the evidence, the usual rule for civil cases, Busker v. United Illuminating Co., 156 Conn. 456 (1968), p. 458.
While not factually identical to the case sub judice, the case of State v. Bucchieri, 176 Conn. 339 (1978), is similar enough to shed light on these issues. In that case the federal government claimed to have a tax lien resulting in a priority to funds seized pursuant to a state search warrant, which funds the state claimed were subject to forfeiture under section 54-33g. In the appeal to our Supreme Court, the United States focused its argument on the priority aspect of its claim. Our Supreme Court, however, recognized a more fundamental, threshold question which had gone unaddressed by the parties and the lower court, viz. had the United States proven ownership of the funds by the taxpayers whose delinquency generated the tax lien. At p. 343, the Court squarely placed the burden of proving ownership by the tax delinquents on the United States, the party claiming an interest in the funds. The taxpayers had never claimed ownership to the funds. The case was remanded to the lower court to resolve the crucial question of ownership, Ibid, p. 345.
This court construes the holding of State v. Bucchieri, supra, to require that, in the absence of a stipulation or concession, the party asserting an interest in property seized under a search warrant must prove that such interest exists in law and fact. This holding conforms to the usual rule governing the allocation of the burden of proof which places such a burden on the party claiming the affirmative and a reluctance to require a party to prove a negative, Tait and LaPlante's, Handbook of Connecticut Evidence, section 4.2.1, 2nd ed., 1988, p. 69. Also, indicia of ownership, such as bills of sale or receipts, will normally be readily accessible to the lawful owner and outside the ken of the state. The party claiming ownership ought to have the responsibility of producing such evidence.
 III
Having allocated the burden of proving ownership, by a preponderance of the evidence, on the claimant, the court now addresses whether that burden has been satisfied. To recapitulate, the cards were found in Chad St. Louis's bedroom and nowhere else CT Page 8647 in the residence. The claimant displayed a lack of knowledge as to the sources, legitimate or otherwise, of most of the cards. She produced no receipts or other similar evidence of acquisition. She produced no records regarding payment for the cards. There was no evidence introduced to demonstrate that when the cards were seized, or shortly thereafter, the claimant protested the seizure or asserted the claim she now makes. The claimant exhibited no special knowledge regarding the cards that would support a finding of ownership.
She accounted for the presence of the collection in her son's room and her ignorance of the source of much of the collection to the purported fact that she allowed her son to act as her agent in acquiring, storing, and organizing the cards. As mentioned above, she specifically declined to call her son as a witness despite his presence at court. The failure of a party to produce an available witness who would naturally be produced by that party permits the fact-finder to infer that the evidence withheld would be unfavorable to the party's cause, Secondino v. New Haven Gas Co.,147 Conn. 672 (1960), p. 675. Where a mother testifies and her testimony would be susceptible of corroboration by her son, who was specially situated to know the facts, as in this case, the failure to call the son to testify falls within the rule as to unfavorable inferences, Baker v. Paradiso, 117 Conn. 539 (1933), p. 546; and Uyen Phan v. Delgado, 41 Conn. Sup. 367 (1990), p. 371. The court draws this unfavorable inference.
The court finds that the claimant has failed to establish she owns the cards seized pursuant to the search warrant. Accordingly, the court orders, under the provisions of section 54-36a(d), that if the property is not properly claimed by the owner within six months, the property, which is a valuable prize, be disposed of by public auction or private sale, in the discretion of the examiner of seized property, and the proceeds shall become the property of the state and deposited in the general fund.
BY THE COURT,
Samuel J. Sferrazza Judge, Superior Court