## Lynch versus The Commonwealth.

88　　189
f 19 SC　98

A prisoner on trial for larceny, being on bail, voluntarily left the court room during the absence of the jury, while deliberating over his case. The jury returned a verdict of guilty, and when the prisoner was called and failed to reappear, the verdict was received and recorded and sentence pronounced in his absence. Held, to be no ground for a motion in arrest of judgment.

November 21st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Quarter Sessions of Butler county: Of October and November Term 1878, No. 263.

William Lynch was indicted and tried for larceny. While the jury were out to determine upon their verdict, the defendant, who was on bail, left the court-room. The jury returned a verdict of guilty, and the defendant having been called and failing to appear, the verdict was received and recorded. The defendant's counsel then made a motion in arrest of judgment on the ground that "the record in this case shows the fact that at the time the jury came into court to return their verdict, and at the time they rendered the same, and at the time the verdict was received and is recorded by the court, the defendant was not in court but was absent therefrom. That therefore the verdict thus rendered, received and recorded was

[Lynch *v.* Commonwealth.]

incomplete, invalid and void, and judgment cannot be pronounced thereon."

The court overruled the motion and pronounced sentence, which action was assigned for error by defendant, who took this writ.

*S. F. Bowser* and *J. H. Bowman,* for plaintiff in error.—The verdict, whatever may be its effect, must, in all cases of felony and treason, be delivered in the presence of the defendant in open court, and cannot be either privately given or promulgated while he is absent: Coke Litt. 237 ; 2 Just. 117 ; Sir Thomas Raymond 198; 2 Hale 300 ; 2 Hawk. 47, sect. 2 ; 4 Bl. Com. 340 ; Bac. Abr., tit. *Verdict;* Burns's Justice, tit. *Juror;* Bishop on Crim. Law, vol. 1, p. 560 ; Chit. on Crim. Law 600 ; Clark *v.* The State, 4 Humph. 254 ; Sneed *v.* The State, 5 Ark. 431 ; Prine *v.* Commonwealth, 6 Harris 103.

[Chief Justice AGNEW.—Was not this rule applied only in cases tried before the Oyer and Terminer, where the jurisdiction grows out of the fact that they were capital cases ? Such was the case of Prine *v.* Commonwealth. I do not remember a case in this state of an offence, triable at Quarter Sessions, where that principle has been laid down. I do not say that the common-law principle will not apply but I merely make this suggestion.]

Mr. *Bowman.*—It has been so asserted in some of the cases we have cited, but it is also said that the principle we contend for has been extended to all kinds of cases, and we claim that the rule admits of no exception.

[Chief Justice AGNEW.—Have you found any English case that applies this rule to cases triable in the Quarter Sessions ? It must be remembered that in Blackstone's time one hundred and sixty-eight cases were triable in the Oyer and Terminer because punishable by death.

Justice MERCUR.—Suppose the defendant persists in his absence, what would you do ?

Justice AGNEW.—I suggest a bench-warrant; but if he is brought in he can again be released upon a bench-warrant.

Justice MERCUR.—The recognisance provides that the defendant shall continue in court until the end, otherwise how could it be forfeited ?

Chief Justice AGNEW.—The practice of the court is strong evidence of what the law is. Have you ever heard in a case of a bawdy-house or misdemeanor that the defendant was called in to hear the verdict ?

Justice MERCUR.—In what respect has the defendant been injured when he goes off and forfeits his bail by not being present when his sentence is pronounced ?]

Mr. *Bowman.*—The law presumes an injury when the provisions of the law are not complied with.

[Lynch *v.* Commonwealth.]

[Chief Justice AGNEW.—It must not be forgotten that larceny is a misdemeanor, and is always tried in the Quarter Sessions. It is not ranked as a felony. I do not see either how a man may be sentenced if he chooses to be absent.]

Mr. *Bowman.*—If he can waive a right at any stage of the trial he may waive it all through.

*W. A. Forquer*, District Attorney, and *Clarence Walker*, for the Commonwealth.—The defendant not being in custody, his voluntary absence was a waiver of his right to be present at the rendering of the verdict: Price *v.* The State, 36 Miss. 531.

Chief Justice AGNEW delivered the opinion of the court, January 6th 1879.

The question in this case is, whether upon the trial of a defendant for *larceny*, it is error to take the verdict of the jury, when he is not present, though he is out on bail, is voluntarily absent, and is called when the jury are ready to deliver their verdict.

In the note at page 602 of the 7th volume of Bioren's edition of the Laws, it is said that the Act of 31st May 1718, is the basis of our criminal law. In the note to the act itself the same remark is quoted from Mr. Bradford's essay on the criminal law of this state (vol. 1, p. 105). Justice COULTER adopts this statement in Dunn *v.* The Commonwealth, 6 Barr 385. Though much of this act has been altered and supplied, some yet remains, and Justice COULTER says in that case that as to the judgment and sentence in criminal cases the act is still in force. These references are made because of the important bearing the Act of 1718 has upon the question before us.

It is well known that William Penn was opposed to the infliction of capital punishment except in the single instance of wilful murder, and beginning with temporary laws, he endeavored to reduce the punishment of all other offences, capital by the laws of England, to lower grades. His efforts were fruitless, however, for when these laws were enacted permanently, they were repealed by the queen in council. This led, as the preamble to the act clearly indicates, to its passage. It not only enacted capital punishment for a number of offences, but declared in the 6th section that "when any persons shall be so as aforesaid convicted or attainted of any of the aforesaid crimes, they shall suffer as the laws of Great Britain now do, or hereafter shall, direct and require in such cases respectively." Thus in the same year the Proprietor died the laws of his province became a code of blood for the following offences: treason, murder, robbery, burglary, rape, sodomy, buggery, arson, malicious maiming, manslaughter by stabbing, concealing by the mother the death of her bastard child, witchcraft and conjuration, and every felony (except *larceny*) on a second conviction.

[Lynch *v.* Commonwealth.]

The third section declared, " that the inquiries and trials of all petit treasons, misprisions of treason, murder, manslaughter and homicides, and all such other crimes and misprisions as by this act or any other Act of Assembly of this province are or shall be made *capital* or *felonies of death*, which have been or shall be done, committed, perpetrated, or happen within this province, shall be as by this act is directed." The 6th section then directs judgment and sentence to be pronounced by the justices of the court according to the manner, form and directions of the laws of England, and execution to be awarded accordingly. A supplement to this act, passed February 26th 1767 (2 Sm. Laws, 274), enacted that the arson of any dwelling-house, house, barn or outhouse having hay or corn therein, and the counterfeiting of gold and silver coin coined in this province, should be felonies of death without benefit of clergy.

These laws became the foundation of the exclusive jurisdiction of the Court of Oyer and Terminer in capital cases, which has since continued. But simple larceny never was a crime triable in the Oyer and Terminer exclusively, and in the Act of 1718, it stood on so low a footing that the first offence was punishable only with restitution of the value of the goods, payment of the costs and expenses of the owner, a fine of double the value of the goods, and a whipping not exceeding twenty-one lashes; the commitment to gaol being only till satisfaction of these should be made. The punishment for a second offence was the same, excepting that the number of lashes should be not less than twenty-one, and not more than forty. As a consequence, simple larceny, whether grand or petit, has always been triable in the Court of Quarter Sessions in the same manner as misdemeanors. So the mayor, recorder and aldermen of Philadelphia (viz. : the Mayor's Court), had the same jurisdiction to try and punish " all *larcenies*, forgeries, perjuries, assaults and batteries, riots, routs and unlawful assemblies, and all other offences which have been committed or shall be committed, within the said city, which would be cognisable in any Court of General Quarter Sessions of the Peace, of or for any county within this Commonwealth," &c.

The fact that larceny is called a felony is of no importance. Felony, as a term, is incapable of any definition, and is descriptive of no offence. Indeed its origin seems to have been a puzzle to law writers. According to Sir William Blackstone, it now imports an offence which occasions a total forfeiture of either lands or goods, or both, at common law, and to which capital or other punishment may be superadded, according to the degree of guilt: 4 Com. 95. And even this forfeiture was abolished by the Constitution of this state, of 1790, except during the life of the offender: art. 9, § 19. It is, therefore, well said in the note, at page 692, in the 7th volume of Bioren's ed. of the Laws, that the term felony has become useless and unintelligible, for it seems to mean something, when in truth it

conveys no distinct ideas.   It comprehends, says the annotator, two descriptions of punishment, the one capital, with the forfeiture of lands and chattels; the other, not capital with forfeiture of chattels only, and the form of burning in the hand, to which imprisonment, &c., may be added.   These notes have the weight of authorities by the recommendation of Chief Justice TILGHMAN, and Justices DUNCAN and GIBSON, who say, in their certificate of examination of the 6th and 7th vols. of these laws, that the notes on the criminal laws are the fruits of much labor and research, and cannot fail to be of general utility: vol. 7, p. 18.

Thus it appears that larceny, while termed a felony, is not, in the light of legal history, one of those offences, which, in this state, were tried in the solemn forms of the courts of England, required by the Act of 1718, to be adopted in cases then declared to be capital.   This will enable us to understand better the force of the expressions of Chief Justice GIBSON and others in the cases cited in the argument.   Thus in Prine v. The Commonwealth, 6 Harris 103, upon an indictment for *burglary*, Chief Justice GIBSON said: "Never has there, heretofore, been a prisoner tried for felony in his absence.   No precedent can be found in which his presence is not the postulate of every part of the record.   He is *arraigned* at the bar, he pleads in person at the bar, and if he is convicted he is asked at the bar what he has to say why judgment should not be pronounced against him."   In these observations he evidently refers to the trial of cases once capital.   It is to such also Justice COULTER refers, as evidenced by his language—"trials that affect life"— "Crimes affecting life or limb (when) the prisoner must be present, when the evidence is given in during the trial, and when the verdict is returned."   We are not left to mere inference as to the meaning of Chief Justice GIBSON, for we have his opinion long before, in the well considered case of Jacobs v. The Commonwealth, 5 S. & R. 315, in which he held that upon an indictment for *larceny* it is not necessary that *arraignment* should appear of record.   All that appeared was the plea of not guilty endorsed upon the indictment. He said there, "The entry of the arraignment, is the record of the defendant's appearance in court for the purpose of being tried, and is necessary only when he must appear in person.   In all misdemeanors a defendant may appear and plead by attorney; but as no one can be convicted of a *capital* offence in his absence, it necessarily results that in trials for offences of that grade, it should appear by the record that the defendant was personally present."   He then refers to the Act of 1718 as the groundwork of our present code, and the practice under it in *capital* cases, remarking that the course of trial in such cases is still the same in these cases, adding that with us *larceny* never was capital.   The sentence in that case was therefore affirmed.

7 NORRIS—13

[Lynch *v.* Commonwealth.]

Thus *larceny* by this decision is taken directly out of the list of offences in which arraignment must affirmatively appear upon the record.    When we consider also comparatively the greater degree of moral turpitude in those high misdemeanors, such as perjury, forgery, bigamy, &c., wherein the defendant may appear and plead by attorney, it cannot be doubted, even if arraignment be necessary as a fact in a trial for larceny, that mere voluntary absence at the rendition of the verdict, by one out on bail, who has appeared, and been tried regularly, is not a fatal error.    He loses no valuable right thereby, for he may move for a new trial, or in arrest of judgment, and cannot be sentenced until he appears.    He cannot move in arrest of judgment because the arraignment does not appear of record, for the entry is not essential to the regularity of the record, as held in Jacobs *v.* The Commonwealth.    If essential he can take advantage of the want of arraignment only by a motion for a new trial.    Presence at the verdict is clearly less important.    In whatever way we view the case, voluntary absence when the verdict is received is an error of which he cannot complain.

We must not overlook in this connection the constant amelioration of the penal code which began in 1786.    The last act of severity was that of 8th March 1780, 1 Sm. Laws 498, which took away the benefit of clergy from robbery from the person whether on or off the highway.    Then came the Act of 15th September 1786, which began amelioration by the substitution, for the penalty of death, of imprisonment at hard labor, with forfeiture of estate, real and personal.    Since that time a gradual mitigation has taken place in the trial and punishment of offenders, until now the criminal code, consisting of the two Acts of March 31st 1860, has placed the trial of offences on a more reasonable basis than when they were punished with great severity.

Therefore when we consider that larceny has always been a bailable offence, even before a justice of the peace (except in the case of horse-stealing), that its trial is put on the same footing with misdemeanors in the Quarter Sessions and Mayors' Courts, that in misdemeanors the defendant may appear and plead by attorney, there is no reason for holding that mere voluntary absence at the rendering of the verdict, by one out on bail, who is called and does not appear, is a ground for reversing a sentence regularly passed.    One so absent waives his privilege.    What can be done but to call him ?    Is the jury to be held until he appears, and if so how long ?    Not being in custody he cannot be had.    If the jury be discharged what is the legal consequence ?    Is it a mistrial, or can he plead the discharge in bar ?    Is his forfeiture of bail a legal substitute for conviction ?    And if the discharge be no bar, the offence being a bailable one, how will a similar result be prevented at the second or any subsequent trial ?    Surely the interests of justice cannot be so

[Lynch *v.* Commonwealth.]

trifled with. We are of opinion there is no error in this record, and the sentence must be affirmed.

> Sentence affirmed, and it is ordered that the record be remitted to the Court of Quarter Sessions of Butler county, with instruction to bring in the defendant, and to carry the sentence of that court into effect.

SHARSWOOD, J., dissented.