# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania : | |
| : | No. 448 C.D. 2015 |
| v. : | |
| : | Argued: February 10, 2016 |
| Justen Irland; Smith and Wesson : | |
| 9MM Semi-Automatic Pistol, : | |
| Serial #PDW0493 : | |
| : | |
| Appeal of: Justen Irland : | |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE McCULLOUGH                    FILED: January 13, 2017

The dispositive question presented on appeal is whether the doctrine of common law forfeiture exists in Pennsylvania and can serve as a legal basis to allow the Commonwealth to forfeit any property with a "nexus" to a crime absent any statutory authority to do so. We conclude that common law forfeiture, as that concept originated and developed in England, was never incorporated into or became part of our Commonwealth's common law tradition. Based upon our research, the Commonwealth's organic law, namely Article 9, Sections 18 and 19 of the

Pennsylvania Constitution of 1790,[1] denounces and effectively abolishes any notion of common law forfeiture and that the predominate, if not unanimous, weight of the authority has determined that common law forfeiture never made it across the seas to America. Therefore, absent a statute that specifically authorizes the forfeiture of property, the Commonwealth and the courts have no authority to seek and order forfeiture of so-called derivative contraband.

Justen Irland appeals from the March 9, 2015 order of the Court of Common Pleas of Adams County (trial court) granting the Commonwealth's motion for forfeiture and destruction of property and denying Irland's motion for return of property. Because the Commonwealth sought forfeiture based on a common law theory, and there was no statute that explicitly authorized the forfeiture, we reverse.

## I. Background

The facts here are not in dispute. On August 25, 2014, Irland entered a guilty plea to the summary offense of disorderly conduct, *see* section 5503(a)(4) of the Crimes Code, 18 Pa.C.S. §5503(a)(4), for an incident on November 7, 2013, when Irland was driving on a road in Adams County and a driver behind him was tailgating his car. In response, Irland displayed his handgun to the driver through the rear

---

[1] Article 9, Section 18 provides: "That no person shall be attainted of treason or felony by the Legislature." Pa. Const. art. IX, §18. This same language has remained and continues to remain in the Pennsylvania Constitution.

In 1790, Article 9, Section 19 stated: "That no attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth. The estate of such persons as shall destroy their own lives shall descend or vest as in cases of natural death, and if any person shall be killed by casualty there shall be no forfeiture by reason thereof." *Former* Pa. Const. art. IX, §19, *as amended*. In 1967, Article 9, Section 19 was amended to delete the second sentence.

windshield of his vehicle, in an apparent attempt to induce the driver behind him to increase the distance between the two vehicles. Someone contacted the authorities, and the local police detained Irland and confiscated the handgun. The Commonwealth charged Irland with simple assault, harassment, disorderly conduct as a third degree misdemeanor, and disorderly conduct as a summary offense. Following his guilty plea to disorderly conduct as a summary offense, the trial court ordered Irland to pay a $200.00 fine.

On December 10, 2014, Irland filed a motion for return of the handgun. On February 4, 2015, the Commonwealth filed a motion for forfeiture and destruction of the handgun based on a theory of common law forfeiture. On March 9, 2015, the trial court denied Irland's motion for return of property and ordered that the handgun be destroyed. Irland then filed a timely notice of appeal.

On April 2, 2015, the trial court directed Irland to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Irland did on April 15, 2015. In his statement, Irland contended that there was no such thing as common law forfeiture in Pennsylvania and that his property could only be forfeited pursuant to a statute. Irland also asserted, in the alternative, that the legislature enacted a comprehensive scheme of statutory forfeiture which displaced and superseded common law forfeiture.

On May 7, 2015, the trial court filed an opinion in support of its March 9, 2015 order pursuant to Pa.R.A.P. 1925(a). Citing this Court's decision in *Commonwealth v. One 2001 Toyota Camry*, 894 A.2d 207 (Pa. Cmwlth. 2006) (en banc), as well as the Superior Court's decisions in *Commonwealth v. Salamone*, 897 A.2d 1209 (Pa. Super. 2006), and *Commonwealth v. Crosby*, 568 A.2d 233 (Pa. Super. 1990), the trial court determined that "there is no doubt that Pennsylvania

3

appellate courts currently recognize the existence of common law forfeiture." (Trial court op. at 3.) The trial court noted that it was not within that court's province "to forge new legal ground, but simply to apply the law as it has been interpreted by the higher courts." *Id.* The trial court also concluded that for purposes of common law forfeiture, there was no qualitative difference between a felony conviction and a summary offense conviction, and found that the Commonwealth established a substantial nexus between the crime committed and the object to be forfeited. *Id.* at 3-4.

In addition, the trial court determined that the Controlled Substances Forfeiture Act (Drug Forfeiture Act), 42 Pa.C.S. §§6801-6802, was not a comprehensive legislative scheme and does not prohibit common law forfeiture. The trial court noted that there were other Pennsylvania statutes that permitted forfeiture and determined that the Forfeiture Act is not the exclusive authority for forfeiture actions. For these reasons, the trial court concluded that common law forfeiture has not been superseded by a pervasive statutory regime.

Irland then filed a timely appeal to this Court.[2]

## II. Discussion

In the statement of questions portion of his appellate brief, Irland asks: "Did the [trial] court commit an error of law in recognizing the existence of a so-called 'common law forfeiture' power that permits the Commonwealth to seize any

---

[2] "The grant or denial of a forfeiture petition rests within the sound discretion of the trial court. In an appeal from a forfeiture proceeding, this Court's review is limited to determining whether the findings of fact are supported by substantial evidence, and whether the trial court committed an error of law or abused its discretion." *Commonwealth v. 2010 Buick Enclave*, 99 A.3d 163, 165 (Pa. Cmwlth. 2014).

4

property with a 'nexus' to a crime, where no such statutory authority otherwise exists?" (Brief for Irland at 4.) In the argument portion of his brief, Irland's contentions, distilled to their essence, advance a relatively straightforward proposal: the proposition that common law forfeiture exists in Pennsylvania is based on a misinterpretation of statutory forfeiture authority. Irland contends that even if government authority once existed to seize property linked to a crime, it has been superseded by comprehensive statutory authority defining the limits of forfeiture. He argues that these statutes would be superfluous if the General Assembly intended to retain common law notions of forfeiture.

Although this Court does not in any way condone Irland's behavior, upon our review, we find Irland's contentions meritorious as a matter of law.

At the outset, this Court notes that decisional law recognizes two types of contraband: contraband *per se* and derivative contraband.

> Contraband *per se* is property the mere possession of which is unlawful . . . . Heroin and 'moonshine' whiskey are examples of contraband *per se*. Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act. An example of derivative contraband is a truck used to transport illicit goods.

*Commonwealth v. Howard*, 713 A.2d 89, 92 (Pa. 1998). Further, "[p]roperty is not derivative contraband merely because it is owned or used by someone who has been engaged in criminal conduct. Rather, the Commonwealth must establish a specific nexus between the property and the alleged criminal activity." *Howard*, 713 A.2d at 92.

In this case, there is nothing illegal about Irland's possession of a handgun. *In re Firearms, Eleven*, 922 A.2d 906, 910 (Pa. Super. 2007). The handgun, or property, was used in perpetration of the summary offense of disorderly

5

conduct. Therefore, this case concerns the issue of whether the property is derivative contraband. *See id.* at 910-11. Our following discussion regarding common law forfeiture is strictly limited to those instances where, in the absence of a statute, the derivative contraband is the item that is sought to be forfeited.

### A. Common Law Forfeiture

In 1776, forfeiture existed in England both at common law and by statute. *Austin v. United States*, 509 U.S. 602, 611 (1993). Specifically, there were three kinds of forfeiture: (1) deodand, (2) forfeiture upon conviction for a felony or treason, and (3) statutory forfeiture. *Id.*

### Deodand

"At common law the value of an inanimate object directly or indirectly causing the accidental death of a King's subject was forfeited to the Crown as a deodand. The origins of the deodand are traceable to Biblical and pre-Judeo-Christian practices, which reflected the view that the instrument of death was accused and that religious expiation was required." *Austin*, 509 U.S. at 611 (citations and internal quotation marks omitted). "This forfeiture proceeding was In rem in nature with the property itself considered [to be] the offender: It is the property to a legal fiction, held guilty and condemned to a legal fiction, held guilty and condemned as though it was conscious instead of inanimate and insentient." *Commonwealth v. 2010 Buick Enclave*, 99 A.3d 163, 166-67 (Pa. Cmwlth. 2014) (quoting *Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931)).

However, as this Court has recognized, "[d]eodand was never embraced in American common law." *2010 Buick Enclave*, 99 A.3d at 167 (citing *Calero-*

*Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682 (1974)). In *Calero-Toledo*, the United States Supreme Court determined whether a forfeiture statute passed constitutional muster. In doing so, the United States Supreme Court traced the history of common law forfeiture and cited *Parker-Harris Co. v. Tate*, 188 S.W. 54 (Tenn. 1916), wherein the Supreme Court of Tennessee observed:

> The doctrine [of deodand], after being subtly refined and pared down, was discarded in England by Stat. 9 and 10, Victoria, c. 62. To the credit of American jurisprudence, from the outset the doctrine was deemed to be so repugnant to our ideas of justice as not to be included as a part of the common law of this country.

*Parker-Harris Co.*, 188 S.W. at 55. Based on this authority, the United States Supreme Court declared that "[d]eodands did not become part of the common-law tradition of this country." *Calero-Toledo*, 416 U.S. at 682.

Nonetheless, scholars have noted that, in theory, deodand has similarities to modern-day statutory forfeiture because they both focus on forfeiting an object or thing that is used in connection with a crime. George M. Dery III, *Adding Injury to Insult: The Supreme Court's Extension of Civil Forfeiture to Its Illogical Extreme in Bennis v. Michigan*, 48 S.C. L. REV. 359, 364 (1997) ("Deodand's 'guilty property' theme, however, survives in today's forfeiture statutes."); Scott A. Nelson, Comment, *The Supreme Court Takes a Weapon from the Drug War Arsenal: New Defenses to Civil Drug Forfeiture*, 26 ST. MARY'S L.J. 157, 164-65 (1994). The United States Supreme Court itself has made the connection between this ancient form of forfeiture and current legislation: "The modern forfeiture statutes are the direct descendants of this (English deodand) heritage." *United States v. United States Coin & Currency*, 401 U.S. 715, 720 (1971). Regardless, as previously explained, the concept of deodand never took hold in colonial America or elsewhere in this country.

**Conviction of Felony or Treason**

"The second kind of common-law forfeiture fell only upon those convicted of a felony or of treason. The convicted felon forfeited his chattels to the Crown and his lands escheated to his lord; the convicted traitor forfeited all of his property, real and personal, to the Crown." *Austin*, 509 U.S. at 611-12 (citations and internal quotation marks omitted). "Such forfeitures were known as forfeitures of estate. These forfeitures obviously served to punish felons and traitors and were justified on the ground that property was a right derived from society which one lost by violating society's laws." *Id.* (citations omitted). Upon conviction of a felony or treason, the offender was considered to have suffered a "legal death," also known as "attainder," which has been defined as "the act of extinguishing a person's civil rights[.]" Black's Law Dictionary, 146 (9th Ed. 2009). The commission of the felony also resulted in "corruption of the blood," which has been described as "[a] defunct doctrine, now considered unconstitutional, under which a person loses the ability to inherit or pass property as a result of an attainder or being declared civilly dead." *Id.* at 397. *See* Robert Lieske, *Civil Forfeiture Law: Replacing the Common Law with a Common Sense Application of the Excessive Fines Clause of the Eighth Amendment*, 21 William Mitchell L. Rev. 265, 272 (1995).

At English common law, the crimes of felony and treason – or what we would simply call today "felony offenses" – were defined as such solely because the punishment imposed upon conviction was forfeiture of the individual's property and estate. 4 William Blackstone, Commentaries on the Laws of England 94 (1766) ("Felony, in the general acceptation of our English law, comprises every species of

8

crime, which occasioned at common law the forfeiture of lands or goods."); *see Lynch v. Commonwealth*, 88 Pa. 189 (1879). Our Supreme Court has recognized this principle in confirming that the distinction between a felony and a misdemeanor is illusory because, unlike the English common law, an individual does not automatically forfeit his property and estate following a felony conviction. 88 Pa. at 192-93. As our Supreme Court stated:

> The fact that larceny is called a felony is of no importance. Felony, as a term, is incapable of any definition, and is descriptive of no offence. . . . [I]t now imports an offence which occasions a total forfeiture of either lands or goods, or both, at common law, and to which capital or other punishment may be superadded, according to the degree of guilt. And even this forfeiture was abolished by the Constitution of this state, of 1790, except during the life of the offender: art. 9, §19. It is, therefore, well said . . . that the term felony has become useless and unintelligible, for it seems to mean something, when in truth it conveys no distinct ideas.

*Id.*

Generally, "[f]orfeiture of a felon's property was also rejected in this country" and most states have explicitly done so "through their constitutions or general statutes." Scott A. Hauert, *An Examination of the Nature, Scope, and Extent of Statutory Civil Forfeiture*, 20 U. DAYTON L. REV. 159, 167-68 & nn. 64, 72-74 (1994). *See* Pa. Const. art. 1, §18; Terrance G. Reed & Joseph P. Gill, *RICO Forfeitures, Forfeitable "Interests," and Procedural Due Process*, 62 N.C.L. REV. 57, 61 (1983). For example, in *Farley v. $168,400.97*, 259 A.2d 201 (N.J. 1969), the Supreme Court of New Jersey proclaimed: "The doctrine of forfeiture upon conviction of treason or felony of course never obtained in our State, N.J.S.A. 2A:152-2, or elsewhere in this country." *Farley*, 259 A.2d at 204.

**Statutory Forfeiture**

Third, and finally, "English Law provided for statutory forfeitures of offending objects used in violation of the customs and revenue laws. The most notable of these were the Navigation Acts of 1660 that required the shipping of most commodities in English vessels. Violations of the Acts resulted in the forfeiture of the illegally carried goods as well as the ship that transported them." *Austin*, 509 U.S. at 612. "Statutory civil forfeiture, as the name suggests, arises by acts of legislatures, state or federal, which ascribe certain criminal character to property, not persons, and provide for their forfeiture to the government." *2010 Buick Enclave*, 99 A.3d at 165-66.

In colonial Pennsylvania, while still a subject of England, and as a result of pressure from the Crown, our General Assembly codified the law of England in the Act of 1718.

> It is well known that William Penn was opposed to the infliction of capital punishment except in the single instance of wilful murder, and beginning with temporary laws, he endeavored to reduce the punishment of all other offences, capital by the laws of England, to lower grades. His efforts were fruitless, however, for when these laws were enacted permanently, they were repealed by the queen in council. This led, as the preamble to the [Act of 1718] clearly indicates, to its passage. It not only enacted capital punishment for a number of offences, but declared in the 6th section that "when any persons shall be so as aforesaid convicted or attainted of any of the aforesaid crimes, they shall suffer as the laws of Great Britain now do, or hereafter shall, direct and require in such cases respectively."

*Lynch v. Commonwealth*, 88 Pa. 189, 191 (Pa. 1879) (citation omitted).

While the Act of 1718 may have been the earliest form of a forfeiture statute in Pennsylvania, by 1791 statutory forfeiture took a more remedial – rather than punitive – appearance. More specifically, in cases concerning convictions for robbery and burglary, statutory law only permitted forfeiture of personal property as a secondary measure and only to the extent that the offender could not return the stolen goods to the victim. Act of September 23, 1791, §9.[3] As one commentator elucidated:

> Although the colonies generally appear to have adopted most of the English criminal law either implicitly or through legislation, certain colonies instituted statutory reforms designed to soften the punitive effect of the traditional English rules relating to criminal forfeiture. These reforms, however, were ordinarily directed at mitigating the extent of criminal forfeiture and the offenses for which it was a penalty . . . .
>
> The New England colonies were the most active in their attempts to modify the English common law by statute . . . .
>
> It was against the background of this colonial experience that our Constitution was drafted. The Framers were

---

[3] This statute provided:

> Wherever any person or persons shall be convicted of robbery or burglary such person or persons shall be ordered to restore to the lawful owner or owners the goods and chattels so stolen or to pay to him her or them the full value thereof or of so much thereof as shall not be restored and the forfeiture of his her or their lands and chattels shall only extend to the residue thereof after such restitution made as aforesaid and the owner or owners of goods and chattels stolen as aforesaid shall have like remedy for restitution by executions issued by the court in which the attainders shall be had as is provided by an act of Assembly in the case of conviction of larceny[.]

Act of September 23, 1791, §9.

understandably bothered by the harshness of the English system of criminal penalties, especially the impact on innocent heirs of the corruption of the blood. They provided in the Constitution that conviction for treason may not result in forfeiture of property or corruption of the blood except during the lifetime of the offender. The First Congress followed suit shortly thereafter by banning forfeiture and corruption of the blood altogether as penalties for federal crimes . . . .

[U]nlike common law attainder, modern statutory criminal forfeiture generally does not reach all of the defendant's property. Instead, the court's forfeiture authority is ordinarily limited to certain specified categories of property that bear some connection to the offense.

Richard E. Finneran & Steven K. Luther, *Criminal Forfeiture and the Sixth Amendment: The Role of the Jury at Common Law*, 35 CARDOZO L. REV. 1, 33-47 (2013).

Current "[e]xamples of statutory forfeiture laws in the Commonwealth include the [Drug Forfeiture Act]; Section 7.1 of what is commonly referred to as the Fireworks Law,[4] 35 P.S. §1278; and Section 601 of the Liquor Code, 47 P.S. §6-601." *2010 Buick Enclave*, 99 A.3d at 165-66. In general, this legislation authorizes the forfeiture of items or property that have a substantial nexus with conduct constituting a violation of the relevant statutes.

Against this background, it should not be surprising that it is a commonly accepted and wide-spread view that "[s]tatutory civil forfeiture is the only type of forfeiture adopted in this country." Hauert, *supra* at 167-68; *accord, e.g.,* Susanne H. Bales, Note, *Constitutional Law—Fifth Amendment Right to Due Process—Civil Forfeiture Defendants and Constitutional Protection*, 62 TENN. L.

---

[4] Act of May 15, 1939, P.L. 134, added by the Act of November 30, 2004, P.L. 1598, *as amended,* 35 P.S. §1278.

REV. 331, 336 (1995). At both the federal and state level, the case law throughout the American jurisdictions has so held. *See, e.g., United States v. Farrell*, 606 F.2d 1341, 1350 (D.C. Cir. 1979); *United States v. Lane Motor Co.*, 199 F.2d 495, 496 (10th Cir. 1952), *aff'd*, 344 U.S. 630 (1953); *United States v. Charles D. Kaier Co.*, 61 F.2d 160, 162 (3d Cir. 1932); *Ghisolfo v. United States*, 14 F.2d 389, 390 (9th Cir. 1926) ("These decisions show very clearly that the power to condemn or declare a forfeiture must be found in the statute"); *United States v. Brant*, 684 F.Supp. 421, 424 (M.D. N.C. 1988); *Davis v. Fowler*, 504 F. Supp. 502, 505 (D. Md. 1980); *United States v. Two Hundred and Sixty-Seven Twenty-Dollar Gold Pieces*, 255 F. 217, 220 (W.D. Wash. 1919); *Prudential Ins. Co. v. Rice*, 52 N.E.2d 624, 624 (Ind. 1944); *Utah Liquor Control Commission v. Wooras*, 93 P.2d 455, 461 (Utah 1939); *State v. Alaway*, 828 P.2d 591, 593 (Wash. Ct. App. 1992); *State v. Anonymous*, 406 A.2d 6, 8 (Conn. Super. Ct. 1979); *State v. One 1960 Mercury Station Wagon*, 240 A.2d 99, 104 (Conn. Cir. Ct. 1968); *People ex rel. Mosk v. Barenfeld*, 203 Cal. App.2d 166, 177 (Cal. Ct. App., 2nd Dist., 1962) ("[T]he courts have no power to create and enforce a forfeiture where there is no underlying legislative authorization.").

For instance, in *Lane Motor Co.*, the United States sought forfeiture of automobiles allegedly used to transport illegal liquors. The United States Court of Appeals for the Tenth Circuit observed that "[p]roceedings of this kind instituted by the United States for the forfeiture of property are essentially statutory proceedings, and they cannot be maintained unless authorized by an applicable statute." 199 F.2d at 496. Because the plain language of the statute at issue did not authorize the forfeiture of the automobiles under the circumstances of the case, the court determined that "forfeiture is not warranted." *Id.* at 497.

In *One 1960 Mercury Station Wagon*, the State of Connecticut, pursuant to statutory authority, sought forfeiture of an automobile that was used as an instrumentality in the commission of the crime of policy playing. In assessing the applicability of the forfeiture statute, the Circuit Court of Connecticut pronounced: "Courts have always declared that the power to declare any forfeiture is solely statutory." 240 A.2d at 104. Ultimately, the court determined that forfeiture was permissible under the statute because the State complied with the pertinent statutory procedures; the statute authorized the forfeiture of seized property that is considered to be a nuisance; and the State proved that the automobile was used in violation of the criminal laws of Connecticut.

In *Austin*, the United States Supreme Court determined whether the forfeiture of property pursuant to a statute could be challenged under the Excessive Fines Clause of the Eighth Amendment.[5] In engaging in background commentary on the history of common law forfeiture, the United States Supreme Court said: "Of England's three kinds of forfeiture, only the third [i.e., statutory forfeiture] took hold in the United States." 509 U.S. at 613.

The above collage of case law establishes that there is a significant amount of authority to support the notion that forfeiture exists in America only to the extent that it is expressly authorized by statute.

**B. Pennsylvania Case Law**

Here, it is undisputed that there was no statute authorizing the forfeiture of Irland's handgun. Because deodand never became a part of American or this Commonwealth's common law, *Calero-Toledo*, 416 U.S. at 682; *2010 Buick*

---

[5] U.S. Const. amend. VIII.

*Enclave*, 99 A.3d at 167, the only potential basis for common law forfeiture would be conviction of a felony, treason, or, quite possibly, some other crime. In this regard, the Pennsylvania case law experience is somewhat unique and marked with conflict.

In the 1960s and 1970s, the Superior Court and a trial court held that there is no common law forfeiture based upon a criminal conviction and that forfeiture must be warranted expressly by statute. In *Commonwealth v. Schilbe*, 175 A.2d 539 (Pa. Super. 1961), the police confiscated a camera and accessories which the defendant used to take obscene pictures of women. The Commonwealth filed a petition seeking forfeiture of the photographic equipment and the pictures. The trial court concluded that "in the absence of any statute providing for the forfeiture of a camera and its accessories used for the purpose of taking obscene pictures, there is no authority to do so." *Commonwealth v. Schilbe*, 25 Pa. D. & C.2d 326, 330 (Berks 1961). On appeal, a unanimous panel consisting of six judges of the Superior Court agreed, adopting the trial court's opinion and rationale as its own. *Schilbe*, 175 A.2d at 539-42 (adopting and reproducing the trial court's opinion).

In *Commonwealth v. Spisak*, 69 D. & C.2d 659 (Somerset 1974), the police arrested a defendant for carrying a pistol without a license and seized the pistol. After the defendant pled guilty to carrying a firearm without a permit, the Commonwealth filed a petition to forfeit the pistol. Before the trial court, the Commonwealth conceded that there was no specific statutory or case law authority in Pennsylvania that would permit forfeiture of the pistol and requested the trial court to exercise the common law power to order forfeiture.

After citing the holding in *Schilbe*, the trial court expounded upon that decision, discussing federal case law and secondary sources such as Corpus Juris

Secundum and American Jurisprudence, all of which supported the view that

forfeiture was purely a statutory matter:

> Nor can we resort to the common law for a judicial forfeiture power . . . .
>
> In 36 Am. Jur. 2d, Forfeitures and Penalties, §15, it is concluded that:
>
> "The forfeiture and disabilities imposed by the early common law on persons attainted by felony are unknown to the laws of this country, and no consequences follow conviction and sentence except such as are declared by law. The ancient common-law doctrine of deodand has likewise been rejected in the United States." . . . .
>
> In 37 C.J.S., Forfeitures, §5a it is asserted:
>
> "Since forfeitures are not favored, . . . they will not be given effect to, except by the express terms of a statute, and where the facts which purport to require such action come clearly and plainly within the provisions of the law."
>
> In *King v. United States*, 364 F.2d 235 (5th Cir. 1966), the Federal government sought forfeiture of the weapons used in the assassination of President Kennedy and the killing of police officer Tippit while engaged in search for the assassin. The court said, p. 235:
>
> "It would certainly be convenient and it would tend to hasten the termination of what must appear to many to be a very distressful bit of litigation were we able to accept the government's present theory and affirm the trial court's judgment forfeiting the weapons to the United States as a species of Deodands."
>
> The court [in *King*] then went on to deny the forfeiture for failure to show a violation of the forfeiture statute.
>
> Following that decision, the government appropriated the same Kennedy-Tippit guns pursuant to a statute authorizing

16

acquisition for preservation of historical items, and the owners sought compensation from the United States: *King v. United States*, 292 F. Supp. 767 (D. Colo. 1968). In the course of that opinion the court said, p. 771:

"Under the peculiar facts of this case, one would suppose that under some principle of common law or at least natural law or natural justice, weapons used in the commission of a crime of this magnitude would be subject to forfeiture by the proper authorities and, certainly, that property of this character would not be subject to commercial traffic. It is, therefore, somewhat astonishing to discover that there is not any such principle and that forfeiture is a matter of statutory regulation."

*Spisak*, 69 D. & C.2d at 665-66.

Accordingly, the trial court in *Spisak* held that "[t]he power of government to deprive the citizen of his property by forfeiture must rest on statute, and cannot be found in any supposed inherent or common law judicial power." *Id.* at 666.

In the 1980s, however, three-judge panels of the Superior Court issued three major decisions, *Petition of Maglisco*, 491 A.2d 1381 (Pa. Super. 1985), *Estate of Peetros v. County Detectives*, 492 A.2d 6 (Pa. Super. 1985), and *Commonwealth v. Coghe*, 439 A.2d 823 (Pa. Super. 1982).

In *Estate of Peetros*, the Commonwealth sought the forfeiture of books seized in connection with the investigation of a homicide. The Commonwealth contended that the books were records of illegal loan-sharking operations and were therefore contraband subject to forfeiture. On appeal, the Superior Court cited former Pa.R.Crim.P. 324, and, in a brief statement, concluded that the books were forfeitable: "By definition, derivative contraband is property which may be used in a lawful manner. Yet it is still subject to forfeiture under the law because of its prior connection with criminal activity." 492 A.2d at 10.

17

In *Coghe*, the Superior Court cited a forfeiture statute and *Commonwealth v. Landy*, 362 A.2d 999 (Pa. Super. 1976), and concluded:

> In the instant case the $1,000 in United States currency that the appellant paid to the person who he had hired to murder his wife is an example of derivative contraband in that the money itself is obviously not inherently illegal but, just as obviously, it was used in the perpetration of an unlawful act, namely; criminal solicitation to commit murder. Thus, we find that the lower court correctly granted the Commonwealth's petition and we deny the appellant's outrageous attempts to have the 'blood money' returned to him.

439 A.2d at 824.

In *Petition of Maglisco*, a wife shot her husband in the leg with a .38 caliber pistol. Upon responding to the residence, the police seized the pistol and the Commonwealth sought forfeiture of the pistol. The Superior Court recognized its prior holding in *Schilbe*, noted that "[t]here is no specific statutory provision which would support the instant forfeiture," but nevertheless held that there is a "common law forfeiture of derivative contraband." 491 A.2d at 1382-83. The Superior Court ultimately upheld the forfeiture of the pistol, concluding that a crime was committed with the pistol and that the pistol, therefore, was derivative contraband. *Id.* at 1384. In so holding, the Superior Court stated that "[b]oth *Landy* [and] *Coghe* affirmed the forfeiture of items involved in the perpetration of a crime without any statutory authority for that forfeiture, thus implying, contrary to *Schilbe*, that 'contraband,' whether *per se* or derivative, is forfeitable without statutory authority." *Id.* at 1383.

These three decisions from the Superior Court have routinely been cited by the courts of this Commonwealth as endorsing the premise that common law forfeiture is a viable means of forfeiture in Pennsylvania. *See, e.g., One 2001 Toyota Camry*, 894 A.2d at 210; *Crosby*, 568 A.2d at 237-38. However, *Maglisco, Estate of*

18

*Peetros*, and *Coghe* have been severely criticized by a subsequent three-judge panel of the Superior Court.

In *Crosby*, the Superior Court noted conflicts in its own precedent regarding whether derivative contraband can be forfeited as a matter of common law upon the criminal conviction of its owner.  *Id.* at 239-40.  Writing for the majority, Judge Rowley astutely observed:

> **Until the early 1980s, forfeiture cases in Pennsylvania involved *statutes* which authorized the forfeiture**. . . .
>
> Despite [the] indicia that the law in Pennsylvania required statutory authority before derivative contraband could be forfeited, since 1982 there has been a series of opinions by the Superior Court which have held that there was common law authority for ordering forfeiture of derivative contraband.  Significantly, however, **the authorities cited in these opinions to support this proposition were cases in which there had been *statutory* authority for the forfeiture.**
>
> For example, in [*Coghe*], wherein the court upheld an order directing the forfeiture of the defendant's $1,000 down payment on a contract to have his wife killed, the only authority cited by the Court for its proposition that "property which is contraband may be forfeited to the Commonwealth," was the criminal statute expressly providing for forfeiture of certain items involved in drug offenses, 35 P.S. §780-128[6] . . . .
>
> Thereafter, in two decisions filed the same day, the Superior Court again found that forfeiture was authorized in the absence of any statutory authority. . . . Yet in *Petition of Maglisco*, the only Pennsylvania authorities cited to support the finding of common law forfeiture of derivative

---

[6] Section 28 of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-128, repealed by the Act of June 30, 1988, P.L. 464.  The forfeiture provision is now located at section 6801 of the Drug Forfeiture Act, 42 Pa.C.S. §6801.

19

> contraband were [*Landy*], and *Coghe*, **both of which themselves rely on authority requiring statutory authorization for derivative contraband to be forfeitable.**
>
> In *Estate of Peetros*, the only authority cited to support the conclusion that derivative contraband is subject to forfeiture is Pa.R.Crim.P. 324 [now Pa.R.Crim.P. 588] which provides that when considering a petition for the return of seized property, the court may order forfeiture if it determines that the property is contraband. However, because the statute authorizing the Supreme Court to promulgate the Rules of Criminal Procedure expressly provides that the Court is not empowered to "abridge, enlarge nor modify the substantive rights of any litigant," 42 Pa.C.S. §1722(a)(1), **unless there is some independent authority for a court to order forfeiture, Rule 324 should not be interpreted as authorizing the forfeiture because such a forfeiture would affect the substantive rights of the parties to the property being forfeited.**

*Crosby*, 568 A.2d at 237-38 (bold emphasis supplied).

Despite its apparent reluctance, the *Crosby* panel majority felt bound to follow *Maglisco*, *Estate of Peetros*, and *Coghe*:

> While this brief review of the highlights of the law of forfeiture of derivative contraband suggests that there may be no convincing authority to support the conclusions in *Coghe, Maglisco*, and *Peetros* that there can be 'common law' forfeiture of derivative contraband in the absence of express statutory authority, we, as a three-judge panel of this Court, are bound to follow these three precedents regardless of the soundness of their logical underpinnings . . . .

*Crosby*, 568 A.2d at 238.

In a dissenting opinion in *Crosby*, Judge Brosky expressed his concern that the court was choosing amongst irreconcilable precedent and argued that the case

20

should be decided by the court sitting *en banc*. Reiterating the previous panel decision in *Schilbe*, Judge Brosky opined:

> [U]nder the present circumstances, the majority's loyalty to prior precedent takes on an appearance of selective, and perhaps even expedient, application of stare decisis rather than some sort of faithful and principled adherence to it. . . . [I]n light of the conflict of authority and the majority's own expressed reservations on the logical and legal underpinnings of the cases authorizing forfeiture under the present circumstances, it is indeed rather dubious to suggest that stare decisis requires homage be paid to the suspect authority. It seems that the present circumstances present one of the rare situations when departure from the principle is not only allowable but, perhaps, advisable or necessary; particularly when the weight of the authority, as the majority seems to concede, contrasts with the authority the court feels compelled to follow.

*Crosby*, 568 A.2d at 242 (Brosky, J., dissenting).

In rebuttal, the *Crosby* majority stated that *Coghe, Maglisco*, and *Estate of Peetros* "are as much a part of the developing common law in Pennsylvania as is *Schilbe*" and "it appears to us that these more recent cases evidence a changing pattern in the law affecting common law forfeiture which must be acknowledged." *Crosby*, 568 A.2d at 238 n.1.

In *Salamone*, another three-judge panel of the Superior Court tried to resurrect the doctrine of common law forfeiture as recognized by the majority in *Crosby*. In doing so, the *Salamone* court relied on our Supreme Court's decision in *Commonwealth v. One (1) 1984 Z-28 Camaro Coupe*, 610 A.2d 36 (Pa. 1992), which held that Article 1, Section 6 of the Pennsylvania Constitution[7] vests an individual with the right to a jury trial in a statutory forfeiture proceeding under the Forfeiture

---

[7] Pa. Const. art. 1, §6.

Act. In developing the test for determining whether a jury trial was warranted, the Supreme Court ascertained whether there was a "common law basis" for forfeiture when our Constitution was adopted in 1790. Significantly, the Supreme Court in *One (1) 1984 Z-28 Camaro Coupe* explained:

> The term 'common law basis' does not, in the context of this case, mean that the action originated at common law, for **even prior to 1790, forfeiture actions were of statutory origin.** *See,* **e.g., The Judiciary Act of 1789, 1 Stat 73.** Rather, 'common law basis' refers to the nature of the proceeding in common law courts such as the Court of Exchequer, but not courts of Admiralty or Chancery. Long before the American Revolution, English Admiralty courts, for example, heard forfeiture cases without a jury, but where common law courts (Courts of Exchequer) had jurisdiction to hear forfeiture cases, as in cases involving forfeitures on land, where there is an issue as to whether the seized goods are contraband, the cases were, according to common law tradition heard by the court sitting with a jury . . . .
>
> Separate courts exercising the jurisdiction of the Court of Exchequer were never established in the American Colonies. Instead, that jurisdiction was absorbed by the common law courts which entertained suits for the forfeiture of property under English or local statutes authorizing its condemnation. **Long before the adoption of the Constitution the common law courts in the Colonies – and later in the states during the period of Confederation –were exercising jurisdiction in rem in the enforcement of forfeiture statutes.**

*One (1) 1984 Z-28 Camaro Coupe*, 610 A.2d at 40 (citation omitted) (bold emphasis supplied).

Based upon this passage, it is obvious that the *Salamone* court's reliance on *One (1) 1984 Z-28 Camaro Coupe* was misplaced, misinterpreting what the Supreme Court meant by "common law basis" and overlooking the fact that the

22

Supreme Court was discussing the right to a jury trial in statutory forfeiture proceedings. Therefore, *Salamone* cannot be construed as supporting the postulate that common law forfeiture (absent a statute) exists in Pennsylvania and does not revive or bolster prior Superior Court cases holding that there is common law forfeiture.

Turning to the precedent of this Court, it should first be noted that we, as a co-equal intermediate appellate court, are not bound by the Superior Court's precedents, but we may adopt the Superior Court's reasoning where persuasive. *Wertz v. Chapman Township*, 709 A.2d 428, 433 n. 8 (Pa. Cmwlth. 1998).

In *Commonwealth v. Cox*, 637 A.2d 757 (Pa. Cmwlth. 1994), a three-judge panel of this Court questioned the Superior Court's conclusion in *Crosby* that common law forfeitures exists, calling that decision and its holding "dubious." 637 A.2d at 758. Notably, we declined to decide whether to follow *Crosby*, resting our decision on other grounds. Particularly, this Court held that the Commonwealth could not attempt to obtain forfeiture after the defendant filed a motion for return of property because the Commonwealth did not file a forfeiture petition or make an oral motion for forfeiture. We explained that "[t]he trial court in essence granted a forfeiture motion which did not exist." *Id.* at 759.

In *Commonwealth v. One 1990 Dodge Ram Van*, 751 A.2d 1235 (Pa. Cmwlth. 2000), the Commonwealth sought the forfeiture of a van owned by the defendant, who was convicted of kidnapping and murder after stabbing the victim in the van and using the van to discard the victim's body. Recognizing the doubts expressed in *Cox* about common law forfeiture in Pennsylvania, this Court nonetheless relied on *Crosby* to hold that the van was derivative contraband subject to

common law forfeiture because the Commonwealth established a specific nexus between the van and the criminal activity.

In *One 2001 Toyota Camry*, rendered in 2006, an *en banc* panel of this Court arguably accepted the holding in *Crosby* that common law forfeiture exists in the Commonwealth of Pennsylvania. *See One Toyota Camry*, 894 A.2d at 210-11; *see also Salamone*, 897 A.2d at 1217 n.11 (interpreting *One 2001 Toyota Camry* as accepting and applying the holding in *Crosby*).

In our most recent pronouncement on the issue, *2010 Buick Enclave*, the Commonwealth sought forfeiture of a vehicle, currency, and a pistol that were seized in connection with a criminal investigation into a fraudulent income tax scheme. On appeal, the defendant contended that this property was not forfeitable because he was never convicted of a crime. This Court agreed, concluding that proof of a conviction was a necessary prerequisite for the Commonwealth to utilize common law forfeiture. In our discussion, we noted the distinction between statutory and common law forfeiture but did not address whether common law forfeiture even exists because the defendant did not raise the issue. We did, however, note the *Crosby* court's criticism of the notion of common law forfeiture. We also opened the door for a challenge to the existence of common law forfeiture in the future:

> [The appellant] does not challenge the existence of common law forfeiture in the Commonwealth. Accordingly, that issue is not before us. [The appellant] does, however, contend that the common law forfeiture of his property was improper because he was never charged with, let alone convicted of, a crime. This is where an important distinction between statutory forfeiture and common law forfeiture (assuming, *arguendo,* it exists) arises.

24

99 A.3d at 168. Because the defendant in *2010 Buick Enclave* was never convicted of a crime, this Court ultimately concluded that the confiscated items could not be forfeited under the theory of common law forfeiture.

### III. Analysis

Upon our independent examination, we conclude that the *Crosby* court's criticism of *Coghe, Maglisco*, and *Estate of Peetros* is justified because those cases lack authoritative support, relying solely on case law where there was a statute specifically authorizing forfeiture and an inapplicable rule of criminal procedure. Likewise, the Superior Court's decision in *Salamone* is unpersuasive because our Supreme Court in *One (1) 1984 Z-28 Camaro Coupe* did not discuss, much less mention, common law forfeiture. Although *Coghe, Maglisco*, *Estate of Peetros*, and *Salamone* may by themselves be considered to be part of the common law, the validity and legal soundness of these decisions have been called into question, not only by the Superior Court, but also by this Court. Accordingly, we now determine whether there is actual authoritative support for common law forfeiture in Pennsylvania.

In 1992, the Washington Court of Appeals surveyed the national case law arena and concluded: "Every jurisdiction that has considered the question has held that the power to order forfeiture is purely statutory." *Alaway*, 828 P.2d at 593 (citing *Farrell*, 606 F.2d at 1350; *Lane Motor Co.*, 199 F.2d at 496 (10th Cir. 1952), *aff'd*, 344 U.S. 630 (1953); *Ghisolfo*, 14 F.2d at 390; *Davis*, 504 F. Supp. at 505; *Brant*, 684 F.Supp. at 424; *Two Hundred and Sixty-Seven Twenty-Dollar Gold Pieces*, 255 F. at 220; *State v. Anonymous*, 406 A.2d at 8; *One 1960 Mercury Station*

*Wagon*, 240 A.2d at 104; *Barenfeld*, 203 Cal. App.2d at 177; *Rice*, 52 N.E.2d at 624; *Wooras*, 93 P.2d at 461)).

The Washington Court of Appeals further observed: "Scholarly authorities also establish that the United States has never had a common law of forfeiture, and that since colonial times, forfeiture in this country has existed only by virtue of statute." *Alaway*, 828 P.2d at 595 (citing C. Smith, *Modern Forfeiture Law and Policy: A Proposal for Reform,* 19 Wm. & Mary L. Rev. 661 (1977-1978); Jacob Finkelstein, *The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty,* 46 Temp. L.Q. 169 (1972-1973); O.W. Holmes, *The Common Law* 34-35 (1881)).

In addition, based upon our research, the secondary authorities and law review articles appear to be in unanimous accord that common law forfeiture has never existed in America and can only be warranted by express statutory authorization. *See, e.g.,* 36 Am. Jur. 2d FORFEITURES AND PENALTIES §19 (2016) ("The right to bring a forfeiture cause exists by statute, not by virtue of the . . . common law."); 38 American Law Reports 4th, 515 (1991) ("In this country, however, forfeiture exists only by virtue of statute."); 8 Ruling Case Law, 257 (1929) ("[T]he forfeiture and disabilities imposed by the common law on persons attainted of felony are unknown to the laws of this country, and no consequences follow conviction and sentence, except such as are declared by law."); Michael Van Den Berg, Comment, *Proposing a Transactional Approach to Civil Forfeiture Reform*, 163 U. PA. L. REV. 867, 874 (2015) ("Although common law forfeiture was not part of the U.S. tradition, statutory forfeiture achieved recognition as legitimate and played a role through the first two centuries of the republic."); *Development in State Constitutional Law: 2000*, 32 RUTGERS L.J. 1079, 1098 n. 64 (2000) ("[I]n the United

States there is no common law forfeiture, and therefore, all forfeiture must be specifically authorized by statute."); Lieske, *supra* at 276 ("Of the three kinds of forfeiture recognized in the English common law, only statutory forfeiture is recognized in the United States."); Leslie C. Smith, *Modern Forfeiture Law and Policy: A Proposal for Reform*, 19 WM. & MARY L. REV. 661, 661 (1978) ("Although never a part of our common law, forfeiture, however, has existed by statute in the United States since colonial days."). In terms of forfeiture based upon conviction of a felony or treason, this English common law tradition has largely been abolished or greatly modified by most states' constitutions. Hauert, *supra* at 167-68 & nn. 64, 72-74.

"Like the constitutions of Virginia, New Jersey, Maryland, and most of the original 13 Colonies, Pennsylvania's Constitution was drafted in the midst of the American Revolution, as the first overt expression of independence from the British Crown." *Commonwealth v. Edmunds*, 586 A.2d 887, 896 (Pa. 1991).

Article 9, Section 18 of the Pennsylvania Constitution provides: "No person shall be attainted of treason or felony by the Legislature." Pa. Const. art. IX, §18. In 1790, Article 9, Section 19 stated: "No attainder shall work corruption of blood, nor, except during the life of the offender, forfeiture of estate to the Commonwealth. The estate of such persons as shall destroy their own lives shall descend or vest as in cases of natural death, and if any person shall be killed by casualty there shall be no forfeiture by reason thereof." *Former* Pa. Const. art. IX, §19, *as amended*.

In *Carpenter's Estate*, 32 A. 637 (Pa. 1895), the defendant son was convicted for murdering his father and the defendant mother was convicted of being an accessory after the fact. Both defendants committed their crimes with the intent to

inherit the father's estate and assigned their respective interests in the estate to another person. The collateral kin sued, claiming that the defendants forfeited their right to receive a share of the father's estate. On appeal, our Supreme Court disagreed, engaging in constitutional commentary.

> We quote our High Court's words verbatim:
>
> The penalty for murder in the first degree in Pennsylvania is death by hanging. No confiscation of lands or goods, and no deprivation of the inheritable quality of blood, constitutes any part of the penalty of this offense. The Declaration of Rights, article 1, sec. 18, of the constitution of the state declares that "no person shall be attainted of treason or felony by the legislature," and by section 19 it is provided that, "No attainder shall work corruption of blood nor, except during the life of the offender, forfeiture of estate to the commonwealth. The estate of such persons as shall destroy their own lives, shall descend or vest in cases of natural death; and if any person shall be killed by casualty, there shall be no forfeiture by reason thereof." These are provisions of the organic law which may not be transcended by any legislation. Inasmuch as the prescribed penalty for murder is death by hanging, Crimes Act of 1860, sec. 75, Bright. Purd. 511, pl. 232, without any forfeiture of estate or corruption of blood, it cannot be said that any such consequence can be lawfully attributed to any such offense. In other words our constitution positively prohibits any attaint of treason or felony by the legislature and any corruption of blood by reason of attainder or any forfeiture of estate, except during the life of the offender.
>
> **The legislature has never imposed any penalty of corruption of blood or forfeiture of estate for the crime of murder, and therefore no such penalty has any legal existence.**

32 A. at 637 (emphasis supplied).

Our Supreme Court in *Carpenter's Estate* then cited a decision from the North Carolina Supreme Court favorably, proclaiming that "[f]orfeitures of property

28

for crime are unknown to our law," *id.* at 638 (citation omitted), and concluded that legislative action was necessary to authorize forfeiture. Although our Supreme Court's decision in *Carpenter's Estate* did not specifically deal with derivative contraband, that case made clear that Article 9, Sections 18 and 19 of the Pennsylvania Constitution of 1790 embody concepts that run counter to and conflict with the idea of common law forfeiture. In interpreting similar language in their state constitutions, the courts of other states have likewise concluded that their constitutions abolished forfeiture of property rights upon conviction of a crime. *See, e.g., Weeks v. New York Life Ins. Co.*, 122 S.E. 586, 589-90 (S.C. 1924), *accord Last v. MSI Const. Co.*, 409 S.E.2d 334, 336 (S.C. 1991) ("The South Carolina Constitution forbids the automatic forfeiture of property rights upon conviction."); *Progressive Life Ins. Co. v. Dean*, 97 S.W.2d 62, 63-64 (Ark. 1936); *Fields v. Metropolitan Life Insurance Co.*, 249 S.W. 798, 798 (Tenn. 1923), *accord State v. Sprunger*, 458 S.W.3d 482, 493 (Tenn. 2015) ("The public policy of this state as expressed in the state constitution opposes forfeitures for convictions of crimes unless specifically provided for.").

Following the natural direction of *Carpenter's Estate* and the unquestioned view espoused by various courts and commentators, we conclude that there is no such thing as common law forfeiture in Pennsylvania and that an individual's property can be forfeited only when the General Assembly enacts legislation that explicitly provides for forfeiture as a penalty for proscribed conduct. *See also Commonwealth v. Wright*, 494 A.2d 354, 357 & 361 (Pa. 1985); *Commonwealth ex rel. Lycett v. Ash*, 20 A.2d 881, 883 (Pa. Super. 1941) (recognizing that the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes). In this case, it is undisputed

29

that there was no statute authorizing the forfeiture of Irland's handgun. Therefore, despite the fact that Irland pled guilty to the misdemeanor crime of disorderly conduct, the trial court lacked the legal authority to order the forfeiture and destruction of Irland's handgun.

Before concluding, we would be remiss if we did not note the fact that Irland pled guilty to a misdemeanor summary offense rather than a felony. As previously explained, at English common law, the crimes of felony and treason were defined as such solely because the punishment imposed upon conviction was forfeiture of the individual's property and estate. However, unlike the crimes of felony and treason, a misdemeanor conviction did not carry such a consequence. *See Lynch*, 88 Pa. at 192-93; Blackstone, *supra*, at 94. Therefore, because forfeiture based upon a misdemeanor was never recognized at English common law, we conclude in the alternative that the Commonwealth could not seek forfeiture of Irland's handgun given the fact that Irland was only convicted of the summary offense of disorderly conduct.

## IV. Conclusion

This Court certainly does not condone or minimize Irland's actions. However, the issue before us is whether, under the common law of Pennsylvania, an individual forfeits property to the government where the conduct has a nexus to – and results in a guilty plea to – the summary offense of disorderly conduct, particularly when there is no statute that explicitly authorizes forfeiture in such a situation. Although English common law recognized forfeiture upon conviction for a felony or treason, this concept and the broader notion of common law forfeiture was never imported to our Commonwealth. In light of the overwhelming weight of the

30

authority and our Supreme Court's decision in *Carpenter's Estate*, we conclude that common law forfeiture does not exist in Pennsylvania; consequently, we are constrained to overrule our case law to the extent that it holds to the contrary on the ground that such case law was erroneously decided. Absent a statute that specifically authorizes the forfeiture of property, the Commonwealth had no authority to seek, and the trial court had no authority to order, forfeiture of Irland's property. Accordingly, we reverse the trial court's order and remand to the trial court with instruction to enter an appropriate order that the property be returned to Irland.[8]

_____
PATRICIA A. McCULLOUGH, Judge

---

[8] Due to our disposition, which effectuates full relief to Irland (return of the handgun), we need not address Irland's alternative argument regarding statutory displacement of common law forfeiture.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania : 
                       :    No. 448 C.D. 2015
            v.            : 
                       : 
Justen Irland; Smith and Wesson : 
9MM Semi-Automatic Pistol, : 
Serial #PDW0493 : 
                       : 
Appeal of: Justen Irland : 

## ***ORDER***

AND NOW, this 13th day of January, 2017, the March 9, 2015 order of the Court of Common Pleas of Adams County (trial court) is reversed. The case is remanded to the trial court with directions to enter an appropriate order that the handgun be returned to Justen Irland.

      Jurisdiction relinquished.

 
 

                            _____
                            PATRICIA A. McCULLOUGH, Judge